811 F.2d 604
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREA HEALTH AND
WELFARE FUND, An employee benefits plan, and
Howard McDougall, Trustee, Plaintiffs,
Counter-Defendants-Appellees
v.
Lester T. COFFER, Defendant, Counter-Plaintiff and
Third-Party Plaintiff-Appellant
v.
E AND L TRANSPORT COMPANY, a Michigan corporation,
Third-Party Defendant-Appellee
 No. 85-1690.
 United States Court of Appeals, Sixth Circuit.
 Dec. 17, 1986.
 
 Before KEITH and MERRITT, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 This case involves the administration of an employee benefit plan operated by Central States on behalf of Mr. Coffer's employer E & L Transport Company. The main question presented calls for an interpretation of Central States' C-5 disability benefit plan (the Plan) and a separate subrogation agreement executed by the parties. Mr. Coffer also filed a counterclaim and a third party complaint in this cause. For the reasons stated below, we affirm the District Court's decision.
 
 
 2
 Most of the relevant facts are not in dispute. Because of a stroke suffered in 1978 and a heart injury sustained in 1980, Mr. Coffer received over $32,000 in benefits from the Central States Plan. In order to receive benefits for the 1980 injury, Mr. Coffer signed a subrogation agreement in favor of Central States for any amount he might recover through worker's compensation. Mr. Coffer subsequently filed a worker's compensation claim based principally upon the injuries for which Central States had previously paid benefits. This worker's compensation case was eventually settled for $12,500. In connection with this settlement, E & L Transport Company agreed to hold Mr. Coffer harmless for any insurance benefits he had previously received.
 
 
 3
 Section 5.03 of the Central States C-5 plan clearly indicates that no benefits are payable for injuries or illnesses that are covered by worker's compensation. That same section, however, provides that the Plan will make advances on pending worker's compensation claims if the employee signs a subrogation agreement to reimburse the plan from the proceeds of any award. Mr. Coffer executed such an agreement after his 1980 injury. In addition, Section 11.03 of the C-5 Plan gives Central States the right to seek reimbursement whenever it makes excess or erroneous payments, even if no subrogation agreement is signed.
 
 
 4
 Mr. Coffer refused to reimburse the Plan after receiving a demand, so Central States filed a complaint seeking $29,926.38 in overpaid benefits under both the subrogation agreement and the Sec. 11.03 recovery provision. Central States later reduced its claim to $10,416.00 which was the net amount of Mr. Coffer's worker's compensation settlement. Mr. Coffer counterclaimed against Central States for intentional infliction of emotional distress based on alleged improprieties in the way the Fund pursued reimbursement. Mr. Coffer also entered a third-party complaint against E & L Transport Company to enforce the hold harmless agreement. The District Court granted Central States' motion for summary judgment, dismissed Mr. Coffer's counterclaim, and dismissed the third-party complaint without prejudice for lack of independent federal jurisdiction.
 
 I. The Motion for Summary Judgment
 
 5
 Mr. Coffer contends that the trial court improperly granted summary judgment because it did not resolve all material factual disputes beforehand. Specifically, Mr. Coffer argues that the court had to determine the exact amount of overlap between the injuries recompensed by Fund payments and those enumerated in his worker's compensation settlement.
 
 
 6
 It is clear from the language of the settlement that the 1978 and 1980 injuries were the gist of Mr. Coffer's worker's compensation claim. It is equally clear from the mere existence of that settlement that these injuries were in fact covered by worker's compensation for purposes of Sec. 5.03 of the Plan. Thus, the Plan was entitled to recover the full amount of the settlement under its subrogation agreement, or could claim reimbursement under Sec. 11.03 for the entire amount of past benefits paid for these injuries. The first option for recovery is based on the clear language of the contract, and the second is based on the language of the plan. If injuries are covered by worker's compensation, no benefits are properly due under Sec. 5.03. Therefore, any benefits paid on those injuries constitute excess payments under Sec. 11.03 and are recoverable in full.
 
 
 7
 Although Mr. Coffer's worker's compensation settlement covered some elements not previously paid for by the Plan, it is unnecessary to engage in the matching exercise he urges. From our analysis of Sec. 5.03 and Sec. 11.03, it is clear that the entire amount paid to Mr. Coffer by the Plan constituted an overpayment which was recoverable in full. These payments totaled over $32,000. Even after the Fund receives its reimbursement under the District Court's order, Mr. Coffer will net at least $21,000 for these injuries.[1] In retrospect, we know that he was only entitled to his worker's compensation settlement of $12,500. To whatever extent the District Court's order deprives him of benefits rightfully due, Mr. Coffer has been amply compensated by the Plan's erroneous payments which he may now keep. Accordingly, there is no need to match Plan payments to the injuries covered by worker's compensation.
 
 II. Coffer's Counterclaim
 
 8
 Mr. Coffer's counterclaim alleged that Central States intentionally inflicted emotional distress through its efforts to collect the overpayments. The District Court found this claim to be both factually insufficient and preempted by ERISA. Since we agree that the conduct cited by Mr. Coffer is not tortious, we do not reach the question of ERISA preemption.
 
 
 9
 The Restatement describes the type of conduct necessary for a claim of intentional infliction of emotional distress as follows:
 
 
 10
 Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
 
 
 11
 Restatement (Second) of Torts Sec. 46, comment d, p. 73. Mr. Coffer contends that Central States committed this tort in demanding a $30,000 reimbursement without regard for his ability to pay, and in offsetting a $45.00 medical reimbursement against his indebtedness. Both of these acts, however, were within Central States' authority to secure reimbursement. Central States had a duty to protect the benefit fund from erroneous payments, and the Plan's provisions provided a number of ways to do so. In this case, Central States pursued a valid claim within the bounds of its authority and did nothing which could be considered extreme or outrageous. Mr. Coffer's tort claim is therefore without merit.
 
 III. The Third-Party Complaint
 
 12
 Mr. Coffer entered a third-party complaint against his employer to enforce the hold harmless agreement discussed above. After the District Court granted summary judgment in favor of Central States, thereby eliminating the basis for federal jurisdiction, the trial judge dismissed this complaint without prejudice. Mr. Coffer contends that the District Court erred in granting this dismissal.
 
 
 13
 The third-party complaint stated a simple contract claim under state law and did not present an independent ground for federal jurisdiction. Since the matter was before the court on pendent jurisdiction, it was within the trial court's discretion to dismiss the cause without prejudice once the federal claims were settled. United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966). Dismissal without prejudice is the proper course in such a case since it allows the plaintiff to press his claim in state court. See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d Sec. 3567.1 (1984). Absent a question of federal policy, it is wiser to allow state courts to resolve state law claims. Gibbs, 383 U.S. at 726-27. Since the third-party complaint here presented no such question, the trial court's refusal to continue its jurisdiction over the pendent claim was within its discretion.
 
 
 14
 Accordingly, the judgment of the District Court is affirmed in all respects.
 
 
 
 [1]
 Of course, this amount will be higher if Mr. Coffer successfully enforces his hold harmless agreement with E & L Transport Company