RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0436p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MEDICAL MUTUAL OF OHIO,
>                         *Plaintiff-Appellant,*
>
>                                                             No. 07-4422
>   *v.*
>
> k. AMALIA ENTERPRISES INC., et al.,
>                         *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 05-00381—Michael H. Watson, District Judge.

Argued: July 24, 2008

Decided and Filed: December 2, 2008

Before: MOORE and SUTTON, Circuit Judges; ALDRICH, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Timothy B. Pettorini, CRITCHFIELD, CRITCHFIELD & JOHNSTON, LTD., Wooster, Ohio, for Appellant. Christopher L. Lardiere, LARDIERE LAW OFFICES, LLC, Columbus, Ohio, Joel H. Mirman, ADAMS, BABNER & GITLITZ, LLC, Columbus, Ohio, for Appellees. **ON BRIEF:** Timothy B. Pettorini, David J. Wigham, CRITCHFIELD, CRITCHFIELD & JOHNSTON, LTD., Wooster, Ohio, for Appellant. Christopher L. Lardiere, LARDIERE LAW OFFICES, Columbus, Ohio, Joel H. Mirman, ADAMS, BABNER & GITLITZ, LLC, Columbus, Ohio, Stephen E. Chappelear, Jeffrey A. Yeager, HAHN, LOESER & PARKS, L.L.P., Columbus, Ohio, for Appellees.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Medical Mutual of Ohio ("MMO"), an insurance company, brought suit against Loan A. Tran ("Tran") and Khanh B. Luu ("Luu") for failing to disclose that their dependent son had a preexisting medical condition (hemophilia). MMO also included as defendants Tran's employer, k. Amalia Enterprises Inc. ("k. Amalia"), which contracted with MMO to provide group health insurance, and k. Amalia's Chief Financial Officer, John M. Barr ("Barr"), who signed the group-health-insurance contract on behalf

_____

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

of k. Amalia.  MMO appeals the district court's grant of summary judgment to k. Amalia, Barr, Tran, and Luu.  Because all of MMO's claims are barred by a contractual limitations provision, we **AFFIRM** the district court's grant of summary judgment to k. Amalia, Barr, Tran, and Luu and **AFFIRM** the district court's denial of MMO's motion for reconsideration.

## I. BACKGROUND

### A. Factual Background

Barr, k. Amalia's Chief Financial Officer, contracted with MMO to provide a group-health-insurance plan.  He signed the Group Application on October 20, 2001.  MMO agreed to cover k. Amalia's employees from November 1, 2001, to October 31, 2002; they renewed the contract in 2002, but did not renew it in 2004.

As part of the contract, MMO required k. Amalia employees to complete Medical History Questionnaires if they wished to be covered by the group-health-insurance plan.  Tran, an employee,[1] and her husband completed and signed the "Health and Life Application/Policy Change" form on October 14, 2001.  Joint Appendix ("J.A.") at 139-41 (Pl.'s Mot. for Leave to Substitute Original Aff., Ex. A-1).  The application submitted by Tran stated that neither Tran nor her dependents had currently (or had previously had) any of the medical conditions listed on the form, including hemophilia.  Tran also checked a box indicating that neither she nor her dependents "had, or [had] been treated for, or been told that" they had "any other condition/disorder/disease" that was not listed explicitly on the form.  J.A. at 140 (Pl.'s Mot. for Leave to Substitute Original Aff., Ex. A-1).

A member of the Financial Investigations Department for MMO stated in his affidavit that "MMO assessed its risk, determined its rates, and issued the group contract for health insurance to the K. Amalia group in reliance upon the truth and accuracy of the information in the applications." J.A. at 137 (Pl.'s Mot. for Leave to Substitute Original Aff., Ex. A, Ferrara Aff. ¶ 5).  The contract gave MMO "the right to void a Covered Person's coverage if that person engages in fraudulent conduct relating to an Application." J.A. at 106 (Contract at § 5.5).  The contract also contained the following contractual limitations provision:

> No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty (60) days after written proof of loss has been furnished in accordance with the requirements of this policy.  No such action shall be brought after the expiration of three (3) years after the time written proof of loss is required to be furnished.  In the case of legal action other than those to recover benefits, no such action may be brought more than two (2) years from the date the cause of action arises.

J.A. at 105 (Contract at § 5.3).

In August 2004, MMO conducted an audit that revealed Tran's dependent son, Hiep Luu, had a pre-existing condition—hemophilia—that had not been disclosed on the insurance application. MMO admits that it knew Hiep Luu had hemophilia "on or before February 1, 2002," but claims that it did not know that this was a pre-existing condition.  J.A. at 92 (Req. for Admis. No. 27).  MMO estimates that it paid approximately $525,000 for claims related to Hiep Luu's treatment before it realized that he had been diagnosed with hemophilia before Tran completed the MMO insurance application.

---

[1]Tran worked for MJR International, which was affiliated with k. Amalia.  There was one group-health plan for both companies.

"MMO processes approximately 102,000 claims per day and has approximately 1.6 million subscribers." J.A. at 138 (Pl.'s Mot. for Leave to Substitute Original Aff., Ex. A, Ferrara Aff. ¶ 9). MMO admits that some of the claims filed on behalf of Hiep Luu referred to a treatment/drug known as "Factor VIII (Antihemophilic Factor, Recombinant), per IU," J.A. at 88 (Req. for Admis. No. 9), and that "it had access to the procedure code prescription/drug name . . . when it decided whether to pay or deny the claims," J.A. at 92 (Req. for Admis. No. 25). Also, MMO admits that "an 'antihemophilic' treatment would be administered to an individual afflicted by hemophilia," J.A. at 91 (Req. for Admis. No. 23), and that it paid a claim for such a treatment in February 2002. J.A. at 88-89 (Req. for Admis. No. 11). Finally, MMO admits that it had never informed k. Amalia or Barr of Hiep Luu's medical-claims history.

## B. Procedural Background

MMO filed suit against k. Amalia, Barr, Tran, and Luu on April 14, 2005. In its Complaint, MMO alleged that Tran, Luu, k. Amalia, and Barr breached the insurance contract, made negligent misrepresentations, and engaged in fraudulent behavior. MMO sought compensatory damages for these claims. MMO also sought partial rescission of the contract, as it related to health-insurance coverage of Tran and her dependents. For this claim, MMO requested that the court provide "restitution . . . in an amount to be determined at trial, but believed to exceed $500,000.00, plus interest, attorney fees and court costs." J.A. at 23 (Compl. ¶ 69). Finally, MMO brought a claim against Tran and Luu, alleging that they had been unjustly enriched by their failure to disclose their son's condition and seeking compensatory damages. K. Amalia filed an answer that included counterclaims alleging that the litigation was "frivolous," that MMO had tortiously interfered with k. Amalia's current and future contractual relations, that MMO had negligently handled "the analysis and payment of claims," and that MMO had breached its contract with k. Amalia. J.A. at 52 (Answer and Countercl. at 17). K. Amalia sought compensatory damages in excess of $50,000.00 on its counterclaims.

K. Amalia, Barr, Tran, and Luu filed a joint motion for summary judgment on July 24, 2006, claiming that MMO had failed to file its suit within the contractual limitations period. MMO filed a response in opposition to the summary-judgment motion on August 18, 2006. Depositions of Tran and Luu were taken in December 2006. The district court granted the motion for summary judgment on May 7, 2007, several days after the discovery-cutoff date had passed. MMO filed a Motion for Reconsideration on September 5, 2007, which the district court denied the following day.[2] After the parties stipulated to the dismissal of the counterclaims without prejudice,[3] MMO filed a timely appeal.

## II. SUBJECT-MATTER JURISDICTION

Although the district court did not analyze subject-matter jurisdiction, and the parties have not contested our jurisdiction, we must independently satisfy ourselves that the federal courts have subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 178 (1988). To that end, we requested letter briefs

---

[2]The facts described above include only information presented to the district court in the motion for summary judgment and response in opposition to the motion for summary judgment. Depositions of k. Amalia's President, Jeffrey Bradshaw, Barr, Tran, and Luu were taken *after* MMO's response in opposition to k. Amalia, Barr, Tran, and Luu's joint motion for summary judgment; we note, however, that these depositions were taken several months *prior* to the district court's ruling. MMO did not seek to supplement the record before the district court prior to its summary-judgment ruling. Only after the district court granted summary judgment to k. Amalia, Barr, Tran, and Luu did MMO seek to introduce these depositions through a motion for reconsideration.

[3]After granting summary judgment, the district court entered a final judgment on May 7, 2007, not taking into account that unresolved counterclaims existed. It acknowledged its mistake on May 24, 2007 and reopened the case.

addressing jurisdiction prior to oral argument. Federal-question jurisdiction, 28 U.S.C. § 1331, in this case is premised on MMO's federal cause of action brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"). Specifically, MMO asserted a claim under ERISA's civil-enforcement provision, § 502(a)(3), 29 U.S.C § 1132(a)(3), seeking partial rescission of the contract between MMO and k. Amalia.

Section 1132(a)(3) provides that a fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C § 1132(a)(3). "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co.*, 523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)). Subject-matter jurisdiction is defeated only if the federal "claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" *Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

Whatever the merits of MMO's § 1132(a)(3) claim for equitable relief, it is clear that this claim is not "wholly insubstantial and frivolous." *Id.* There is no dispute that MMO is a fiduciary, that the plan at issue in this case qualifies as an ERISA plan, and that none of the statutory exemptions from ERISA are applicable. As a fiduciary, MMO may, pursuant to 29 U.S.C. § 1132(a)(3), seek "appropriate equitable relief" to redress violations of ERISA or to enforce the terms of the plan. The only remaining threshold question regarding MMO's § 1132(a)(3) claim is whether that claim and the relief requested from the district court—rescission of the contract—should be characterized as "equitable" or "legal." *Cf. Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356 (2006); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). As discussed below, this issue was not raised by the parties and therefore we do not pass on it. In any case, the answer is irrelevant to our subject-matter jurisdiction inquiry. Even if the contract rescission requested by MMO were characterized as "legal" relief and therefore failed to state a claim upon which relief could be granted, federal courts would nonetheless have subject-matter jurisdiction. *See Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 520-21 (6th Cir. 2006) ("In sum, we hold that a district court has subject-matter jurisdiction over an action ostensibly brought under 29 U.S.C. § 1132(a)(3) apparently for solely legal relief, even if that action fails to state a claim upon which relief can be granted."). Accordingly, we conclude that there is subject-matter jurisdiction over this action.

### III. MOTION FOR SUMMARY JUDGMENT AND MOTION FOR RECONSIDERATION

#### A. Standards of Review

We review a district court's grant of summary judgment de novo. *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(c)). "Because we review the grant of summary judgment *de novo*, we may affirm the judgment on grounds other than those employed by the lower court, as long as the party opposing summary judgment is not denied the opportunity to respond." *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 456 n.2 (6th Cir. 2008); *see also Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008).

Although we usually review for abuse of discretion a district court's denial of a motion to reconsider, when a party files a motion for reconsideration of a grant of summary judgment we review the district court's decision de novo. *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir.), *cert. denied*, 540 U.S. 824 (2003). However, "[a] district court's refusal to consider evidence produced for the first time on a motion to reconsider will be reversed only if the refusal constitutes an abuse of discretion." *Id*.

## B. ERISA Claim

We may assume without having to decide that MMO's partial-rescission claim states an "equitable" claim cognizable under § 1132(a)(3).[4] MMO's claim is nonetheless barred by the limitations provision of the contract between MMO and k. Amalia, which provides:

> No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty (60) days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three (3) years after the time written proof of loss is required to be furnished. In the case of legal action other than those to recover benefits, no such action may be brought more than two (2) years from the date the cause of action arises.

J.A. at 105 (Contract at § 5.3). The district court assumed that the two-year provision applied to all of MMO's claims, and MMO's brief on appeal repeatedly refers to the two-year limit. MMO Br. at 35, 37, 38. We note, however, that the two-year provision, which refers to a "legal action," could plausibly be read as referring only to *actions at law* so as not to include equitable claims. *See* 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1041 (3d ed. 2008) (discussing the historical distinction between "actions at law" and "suits in equity"). However, we need not decide whether it is the two-year provision or the three-year provision that applies to MMO's claim. As we explain below, because MMO's claim accrued in February 2002 but MMO did not bring suit until April 14, 2005, more than three years later, MMO's claim is barred even if we assume that only the three-year provision applies.

ERISA does not provide a statute of limitations for suits brought by a fiduciary under § 1132(a)(3).[5] When a federal statute contains no limitations period, we normally borrow the limitations period from the most "analogous" state or federal law. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355-58 (1991); *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). However, choosing which statute to borrow is unnecessary when the parties have contractually agreed on a limitations period and that limitations period is reasonable. *See Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 301-03 (6th Cir. 2006) (upholding application of three-year contractual limitations period contained in benefits handbook to ERISA action); *see also Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998) (holding that "contractual limitations periods on ERISA actions are enforceable, regardless of state law, provided they are reasonable"); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 875 (7th Cir. 1997) (holding that contractual limitations periods "if reasonable

---

[4]Because the parties did not raise the issue, we decline to pass on whether or not MMO's partial-rescission claim states a claim for "equitable" relief under § 1132(a)(3). *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) (recognizing "that a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits" (internal quotation marks omitted)). In any event, we would reach the same result since MMO's claim is barred under the contractual limitations period.

[5]The statute of limitations provided by 29 U.S.C. § 1113 applies only to suits brought to redress a fiduciary's breach of its responsibilities, duties, or obligations under ERISA.

are enforceable in suits under ERISA, regardless of state law"). Because the contract language clearly states that the parties shall have either two years or three years to bring the claim at issue and MMO did not present arguments indicating that a limitations period of two or three years would be unreasonable, we find no reason to believe that the contractual limitations provision here is unreasonable. Accordingly, we uphold the district court's finding that the limitations provision applies to this case.

We now turn to MMO's argument that because it did not discover the alleged fraud until August 2004, the "discovery rule" makes its suit, filed on April 14, 2005, timely under the contractual two-year limitations period. As a preliminary matter, although the parties and the district court assumed that Ohio law governed application of the "discovery rule," we have held that the "discovery rule" is a matter of federal common law in the context of ERISA claims under § 1132(a)(3). *Mich. United Food & Commercial Workers Unions v. The Muir Co.*, 992 F.2d 594, 598 (6th Cir. 1993) ("Although the statute of limitations may be borrowed from state law, it is federal law that determines the date on which a statute of limitation[s] begins to run."). The presence in the parties' contract of a choice-of-law provision stating that the contract will be governed by "the laws of the state of Ohio," J.A. at 115 (Contract at § 10.8), does not change this result. As we have observed elsewhere, "'the normal purpose of such choice of law clauses is to determine that the law of one state rather than that of another state will be applicable; they simply do not speak to any interaction between state and federal law.'" *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 938 (6th Cir. 1998) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 488 (1989) (Brennan, J., dissenting)).

Under the general formulation of the discovery rule, a claim accrues (and the statute of limitations begins to run) when the plaintiff discovers, or in the exercise of due diligence should have discovered, the injury which forms the basis for his claim. *See, e.g.*, *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007); *Mich. United Food*, 992 F.2d at 598 (collecting cases). In the context of fraud, we have "imposed upon the plaintiff a positive duty to use diligence in discovering the existence of a cause of action." *Herm v. Stafford*, 663 F.2d 669, 682 (6th Cir. 1981). We have also held that "[i]nformation sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's *duty to inquire* into the matter with due diligence." *Mich. United Food*, 992 F.2d at 600 (alteration in original) (internal quotation marks omitted). And in determining whether a plaintiff was reasonably diligent, we have stated that a plaintiff's "superior personnel and equipment with which to detect foreseeable . . . error" is relevant to the inquiry. *Id.*

MMO had access to information more than three years before it filed suit that, in the exercise of due diligence, should have allowed it to discover that Hiep Luu had a pre-existing condition. At least as early as February 2002, MMO had the following information: (1) Tran and Luu did not disclose hemophilia as a pre-existing condition for Hiep Luu, and (2) within a few months of the contract's formation, on February 1, 2002, MMO had paid over $8,000 worth of hemophilia treatments for Hiep Luu. *See* J.A. at 219-20 (Claims Paid Chart at 1-2). Yet MMO did not file suit until April 14, 2005, more than three years after it began paying claims for Luu's hemophilia treatment. MMO argues that it did not discover that Tran and Luu had misrepresented Hiep Luu's health status on their application until an audit that MMO conducted in August 2004. Although MMO may have obtained actual knowledge that Hiep Luu had a pre-existing condition only in August 2004, we conclude that it reasonably should have discovered this fact in February 2002.

In *Michigan United Food*, we affirmed summary judgment against the plaintiff, a union welfare fund, which had brought suit under ERISA to recover alleged employer underpayments to the fund. 992 F.2d at 597-600. Like MMO, the plaintiff in *Michigan United Food* did not have actual knowledge of its causes of action until it completed an internal audit, and similarly relied upon the "discovery rule" to argue that its claims were not barred by the limitations period. *Id.* at 597. Noting that the plaintiff "possessed both the data and the qualified personnel necessary to

detect [the] errors" on which it brought suit, we concluded that "[i]ts failure to detect the errors until the audit [was] attributable to a lack of diligence." *Id.* at 600.

Viewing all of the evidence in the light most favorable to MMO, we believe the same reasoning applies here. MMO is a sophisticated insurance company that had in its hands for more than three years before it filed suit sufficient information to place it on notice of the possibility of fraud. MMO did not provide any evidence that would explain why it was not capable of conducting an audit prior to 2004, nor did it indicate that it had access to information in 2004 to which it previously did not have access. We conclude that MMO's claims accrued in February 2002, when it began paying claims for Hiep Luu's hemophilia treatment and should have discovered that it had a cause of action. MMO did not file suit until April 14, 2005, more than three years later. Accordingly, whether the applicable limitations period is two or three years, we conclude that MMO's ERISA claim is barred by the contractual limitations provision.

## C.  Remaining Claims

MMO also brought claims for fraud, negligent misrepresentation, breach of contract, and unjust enrichment. There is some confusion in the record before us about whether MMO brought these claims under federal common law or under Ohio law. The complaint does not state that these four claims were brought pursuant to Ohio law, but the district court's opinion assumed that this was the case. Indeed, the appellate briefs originally filed by the parties address only Ohio law. MMO first discussed the applicability of federal common law in the letter brief that it filed in response to our request that all of the parties address our jurisdictional questions prior to oral argument. However, MMO did not state definitely that it thought federal common law applied, only that the claims were "either cognizable under the federal common law of ERISA *or* [were] state law claims which were not preempted" and would qualify for supplemental jurisdiction under 28 U.S.C. § 1367(a). 7/11/2008 MMO Ltr. Br. at 13 (emphasis added). We do not rule on whether MMO's additional claims were brought under Ohio law or federal common law, because in either case they would be barred by either the two-year or three-year contractual limitations provision.

First, we assume without deciding that MMO asserts these claims under Ohio law. Defendants-appellees argue for the first time in their letter briefs that MMO's claims are preempted by ERISA. We do not reach the question of ERISA preemption, however, because even if we were to conclude that MMO's claims were not preempted by ERISA, the claims would be barred by the contractual limitations provision. *See, e.g.*, *Cent. States, Se. & Sw. Area Health & Welfare Fund v. Coffer*, No. 85-1690, 1986 WL 16215 (6th Cir. Dec. 17, 1986) (unpublished opinion) (declining to reach question of ERISA preemption because plaintiff's state-law claim failed on the merits); *see also Sinochem*, 127 S. Ct. at 1191 (recognizing "that a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits" (internal quotation marks omitted)).

Our analysis of the contractual limitations provision under Ohio law is virtually identical to our earlier analysis of the limitations provision under federal law. Under Ohio law, a contractual limitations provision that reduces the time available to bring an action on a contract is enforceable so long as it is reasonable and is stated in words that are "clear and unambiguous." *Angel v. Reed*, 891 N.E.2d 1179, 1181 (Ohio 2008). As we explained above, the contractual limitations provision here is reasonable and was clearly and unambiguously set forth in the contract between MMO and k. Amalia; it is therefore enforceable under Ohio law. Ohio courts also apply a version of the "discovery rule" to state-law fraud claims that mirrors the federal rule that we applied to MMO's ERISA claim. *Wooten v. Republic Sav. Bank*, 876 N.E.2d 1260, 1267 (Ohio Ct. App. 2007) ("[T]he limitations period [for fraud claims] begins to run when the claimant discovered or, in the exercise

of reasonable care, should have discovered the fraud." (internal quotation marks omitted)).[6] Under the same reasoning that we applied to MMO's ERISA claim, *supra*, we conclude that MMO's fraud claim (assuming that it is brought under Ohio law) would not be saved by Ohio's discovery rule because MMO should have discovered that it had a cause of action in February 2002, when it began paying claims for Hiep Luu's hemophilia treatment. Accordingly, assuming these claims were brought under Ohio law, they are barred by the contractual limitations period.

Next, we assume without deciding that MMO's claims for fraud, negligent misrepresentation, breach of contract, and unjust enrichment were brought under the federal common law.[7] For the same reasons set forth in our analysis of MMO's ERISA claim, *supra*, MMO's claims would be barred by either the two-year or three-year contractual limitations period.

In sum, we hold that the district court did not err when it dismissed MMO's claims for fraud, negligent misrepresentation, breach of contract, and unjust enrichment as barred by the contractual limitations provision.

## D. Motion for Reconsideration

After the district court granted summary judgment, MMO filed a motion for reconsideration, presenting new arguments and evidence from depositions taken between the summary-judgment briefing and the district court's decision. MMO also contended in that motion that the district court clearly erred when it analyzed the contractual limitations provision at issue. MMO now argues that the district court erred by not considering the "new" evidence it presented in its motion for reconsideration. K. Amalia, Barr, Tran, and Luu contend that the district court properly denied MMO's motion for reconsideration.

Neither of MMO's arguments affect our holding that all of MMO's claims are barred by the contractual limitations provision. Federal Rule of Civil Procedure 60(b) provides that a "court may relieve a party . . . from a final judgment, order, or proceeding" for several reasons, including: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) . . . or (6) any other reason that justifies relief." FED. R. CIV. P. 60(b). Even if we were to assume that the depositions introduced could be considered "new" information,[8] we would still reach the conclusion that MMO failed to file a claim within the contractual limitations period,

---

[6]MMO's claims for negligent misrepresentation, breach of contract, and unjust enrichment would apparently not enjoy the protections of the discovery rule. *See Dancar Props., Ltd. v. O'Leary-Kientz, Inc.*, No. C-030936, 2004 WL 2974067, at *2 (Ohio Ct. App. Dec. 23, 2004) (unpublished opinion) (expressing doubt that discovery rule applies to claims for negligent misrepresentation); *Hahn v. Jennings*, No. 04AP-24, 2004 WL 2008474, at *7 (Ohio Ct. App. Sept. 9, 2004) (unpublished opinion) ("[W]e know of no case in which a tort-style discovery rule has been applied to a breach of express warranty action sounding in contract."); *Palm Beach Co. v. Dun & Bradstreet, Inc.*, 665 N.E.2d 718, 722-23 (Ohio Ct. App. 1995) (holding that discovery rule does not apply to unjust-enrichment claims).

[7]We express no opinion on whether such claims would be cognizable as a matter of federal common law.

[8]Despite the fact that MMO considers the allegedly "newly discovered" evidence to be critical to its case now, we note that MMO did not file a motion under Federal Rule of Civil Procedure 56(f) when it responded to the motion for summary judgment. Rule 56(f) provides: "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." FED. R. CIV. P. 56(f). A Rule 56(f) motion could have allowed MMO to introduce the depositions that had not yet been taken as part of the response to the summary-judgment motion. We agree with the district court's analysis: "If the state of the evidence was incomplete when [MMO's] response to the summary judgment motion was due, [MMO] should have sought relief pursuant to Fed. R. Civ. P. 56(f)." J.A. at 267 (9/6/2007 Order). "[P]iecemeal presentation of the summary judgment issues" is not appropriate. *Id.*

because MMO did not introduce evidence in its motion for reconsideration that would establish that it could not have discovered the alleged fraud in February 2002.

In its motion for reconsideration, MMO also made the new argument that several of the relevant payments for hemophilia fell within the limitations period, and that it should at least be allowed to recover these amounts. That argument is without merit because a "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (internal quotation marks omitted). The individual medical claims did not count as discrete wrongs, but merely perpetuated the harm from the original wrong—the statements and omissions contained in the application submitted by Tran. Thus, MMO's argument does not affect the conclusion that MMO's claim accrued when it first began paying out benefits for hemophilia treatment in February 2002.

Based on the foregoing, we hold that the district court properly denied the motion for reconsideration.

## IV. CONCLUSION

Because all of MMO's claims are barred by the contractual limitations period, we **AFFIRM** the district court's grant of summary judgment to k. Amalia, Barr, Tran, and Luu. Because MMO's motion for reconsideration did not raise any issues that affect our analysis, we also **AFFIRM** the district court's denial of MMO's motion for reconsideration.