NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0850n.06

No. 12-4006

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Sep 26, 2013

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| THOMAS WILLIAMS, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| METROPOLITAN LIFE INSURANCE CO. | ) THE SOUTHERN DISTRICT OF |
| AND THE UNIVERSITY OF DAYTON LONG | ) OHIO |
| TERM DISABILITY PLAN FOR SALARIED | ) |
| ASSOCIATES, | ) |
| | ) OPINION |
| Defendants-Appellees. | |

Before: BOGGS and DONALD, Circuit Judges; STAMP, District Judge.[*]

**Bernice B. Donald, Circuit Judge.** Thomas M. Williams appeals the district court's

decision to grant summary judgment based on the administrative record in favor of Metropolitan Life

Insurance Company and the University of Dayton Long Term Disability Plan for Salaried Associates,

in his suit brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.

§ 1132(a)(1)(B). The district court found that Williams' claims were time-barred. It also found that

even if the claims were not time-barred, Metropolitan Life Insurance Company's decision to

---

[*]The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the Northern
District of West Virginia, sitting by designation.

terminate Williams' long-term disability benefits based on his failure to participate in a mandatory vocational rehabilitation program was not arbitrary and capricious. For the reasons discussed herein, we AFFIRM.

## I.

On December 19, 1984, Thomas M. Williams began working as a ballistics technician for the University of Dayton and continued to work in that capacity for almost twenty years. (Page ID 185.) On September 11, 2003, Dr. Steve Kleinhenz, Williams' treating physician, diagnosed Williams with bilateral knee osteoarthritis. (Page ID 68.) During the examination, Dr. Kleinhenz recommended a total knee replacement to treat Williams' impairment. (*Id.*) On June 2, 2004, Williams' knee pain was so bad that it prevented him from working, although he was just four years from being eligible for full retirement benefits. (Page ID 177, 28.) Williams took an approved medical leave of absence. (*Id.*) On January 19, 2005, pursuant to the University of Dayton's long-term disability plan (Plan), Williams applied for long-term disability (LTD) benefits with Metropolitan Life Insurance Company (MetLife). (Page ID 177.) On February 10, 2005, MetLife approved Williams' application for LTD benefits for a term spanning from November 30, 2004 through March 15, 2005. (Page ID 172.) The approval letter stated that benefits beyond March 15, 2005 would not be paid unless Williams submitted updated medical documentation that supported his eligibility for disability benefits. (*Id.*) The approval letter did not contain a copy of the Plan, but it did inform Williams that he could submit a written request to his employer for this information. (Page ID 174.)

On March 14, 2005, MetLife informed Williams by letter that he might be eligible to receive Social Security disability benefits and encouraged him to apply. (Page ID 161.) According to the letter, "[f]ailure to apply for Social Security [disability] benefits can cause your long-term disability benefits to be reduced, or withdrawn, if your plan requires that you apply for them." (Id.) MetLife also "strongly recommended" that Williams contact a named firm to assist him in the application process. (*Id.*) Williams applied for Social Security disability benefits with the assistance of the law firm that MetLife recommended.

On May 15, 2006, Dr. Kleinheiz completed an attending physician statement, which indicated that Williams was able to sit for eight hours a day, stand for four hours a day, walk for four hours a day, lift up to twenty pounds frequently, and lift twenty to one-hundred pounds occasionally. (Page ID 69.) While Dr. Kleinheiz indicated that Williams was "OK for sedentary work," he did not authorize Williams to return to work, but he also did not recommend that he undergo physical therapy, pain management, or vocational rehabilitation. (*Id.*)

On July 31, 2006, the Social Security Administration approved Williams' claim for disability benefits, retroactive to November 2004. (Page ID 48.) In August 2006, Williams received $26,237.00 from the Social Security Administration. (*Id.*) Under the Plan, approved Social Security disability insurance benefit resulted in an overpayment of LTD benefits because Social Security disability insurance benefits are considered "other income" that offset LTD benefits. (Page ID 161.) (*Id.*) As such, on October 2, 2006, Williams paid $20,230.37 to MetLife. (Page ID 45, 48, 161-62.)

On October 30, 2006, MetLife determined that Williams was eligible for vocational rehabilitation, based on Dr. Kleinheiz's report that Williams was able to perform sedentary-type employment. (Page ID 42.) According to MetLife, the Plan explicitly requires participation in an approved Rehabilitation Program and failure to participate can result in termination of LTD benefits. (*Id.*)

According to MetLife, it made numerous attempts to contact Williams to inform him that MetLife was invoking the mandatory rehabilitation clause. Only two of those contacts, however, are directly relevant to the instant appeal. First, on October 30, 2006, a MetLife rehabilitation consultant, Joseph Atkinson, allegedly sent a letter by certified mail, but the record shows that the letter was signed for and received by a man named Ron Johnson, who Williams states that he does not know. (Page ID 24, 38.) According to MetLife, the letter indicated that Williams' failure to participate in a vocational rehabilitation program "could result in termination of [his long-term disability] benefits." (Page ID 24.) Second, on January 11, 2007, MetLife allegedly advised Williams in writing that his long-term disability benefits had been terminated, effective immediately, "based on his failure to apply for state rehabilitation services and failure to cooperate with Vocational Rehabilitation by not responding to repeated attempts to communicate with him." (Page ID 34.)

On October 16, 2007, Williams contacted MetLife regarding his LTD claim and was advised that his benefits had been terminated. MetLife then mailed Williams a copy of the January 11 letter. (Page ID 24.) That same month, Williams also spoke with Beth Schwartz, a Benefits Manager with

the University of Dayton, regarding the termination of his LTD benefits. (Page ID 28  29.) In a letter dated November 27, 2007, Schwartz indicated that Williams needed to comply with MetLife's request for occupational therapy and evaluation, or else she would have no choice but to also terminate Williams' employment, which would result in a loss of his retirement benefits through the University of Dayton. (*Id.*) Williams was seven months away from qualifying as a retiree with the University of Dayton and receiving retirement benefits, regardless of whether he continued to receive LTD benefits from MetLife. (*Id.*)

Subsequently, Williams retained Attorney Barry S. Galen. (Page ID 27.) On December 20, 2007, Galen advised MetLife that he represented Williams and that Williams intended to comply with any reasonable requirements demanded by MetLife. (*Id.*) Galen explained that Williams did not receive MetLife's letters or other modes of communication outlined in MetLife's termination letter. (*Id.*) Galen also indicated that the January 11, 2007 termination letter was not received until the copy arrived on October 20, 2007. (*Id.*)

Despite MetLife's appeal process, requiring an appeal within 180 days, MetLife treated Galen's December 20, 2007 letter as a notice of appeal. (Page ID 23  25.) On January 16, 2008, Sharon O'Connor, a MetLife Appeal Claims Specialist, informed Galen that MetLife was upholding the termination of Williams' LTD benefits with an effective termination date of January 11, 2007. (*Id.*) The letter also indicated that Williams had exhausted his administrative remedies under the Plan, and that MetLife would not consider additional appeals. (*Id.*) Consequently, Williams lost his LTD benefits and his retirement benefits from the University of Dayton. (Page ID 28.)

On July 18, 2011, approximately three years and six months after the denial of appeal, Williams filed suit in federal district court against MetLife and the University of Dayton Long Term Disability Plan for Salaried Associates. Both parties moved for summary judgment, and the district court granted MetLife's motion. The district court held that Williams' suit was time-barred and that even if it were not, MetLife's termination of benefits was not arbitrary and capricious. Williams now appeals.

**II.**

This court reviews *de novo* a district court's grant of summary judgment in an ERISA disability-benefits action based on an administrative record. *Glenn v. MetLife*, 461 F.3d 660, 665 (6th Cir. 2006), *aff'd*, 554 U.S. 105, 111 (2008); *see also Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). "We also review *de novo* 'a district court's determination that a complaint was filed outside of the statute of limitations.'" *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 453 (6th Cir. 2009) (quoting *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009)).

MetLife argues that Williams' claims are time-barred by the Plan's three-year statute of limitations. Williams contends that, in accordance with *Meade v. Pension Appeals & Review Committee*, 966 F.2d 190, 195 (6th Cir. 1992), Ohio's fifteen-year statute of limitations for breach of contract applies, and that his claim is therefore timely filed.

ERISA does not contain a statute of limitations for claims challenging a denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); in order to fill the gap, we borrow the most analogous state

statute of limitations to apply to ERISA claims. *See Rice*, 578 F.3d at 454 (citing *Redmon v. Sud-Chemie Inc. Ret. Plan for Union Emps.*, 547 F.3d 531, 534 35 (6th Cir. 2008)). However, "[c]hoosing which statute to borrow is unnecessary when the parties have contractually agreed on a limitations period and that limitations period is reasonable." *Id.* (quoting *Med. Mut. of Ohio v. k. Amalia Enters.*, 548 F.3d 383, 390 (6th Cir. 2008). MetLife's LTD benefit plan states that a claim may be brought only within a period that begins, "60 days after the date Proof is filed and ends 3 years after the date such Proof is required."[1] (Page ID 329.) We have previously deemed three-year statutes of limitation periods to have been reasonable, and we see no reason to find otherwise. *See Rice*, 578 F.3d at 454; *Med. Mut. of Ohio*, 548 F.3d at 390 (upholding three-year time limitation as reasonable).

In *Rice*, we held that parties can contract for the date on which an ERISA claim accrues, which is the date the statute of limitations begins to run. *See* 578 F.3d at 455-56. It is evident that MetLife intended to dictate the accrual date because the Plan states that the limitations period begins on the date that proof is required. Moreover, MetLife asserts that in order for Williams' LTD benefits to continue, he was required to submit proof that he complied with the Plan's mandatory rehabilitation requirements. The Plan, however, does not establish a generally applicable deadline for submitting proof of compliance with respect to participation in a vocational rehabilitation

---

[1]Proof is defined as "[w]ritten evidence satisfactory to [MetLife] that a person has satisfied the conditions and requirements for any benefit described in this certificate. When a claim is made for any benefit described in this certificate, Proof must establish: the nature and extent of the loss or; our obligation to pay the claim; and the claimant's right to receive payment." (Page ID 306.)

program, so it is impossible to determine, based solely on the language of the Plan, when the three-year period began to run.

In the absence of a contract accrual date, the federal law should govern. *See Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010). The federal common law rule for accrual is that an action for benefits accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Id.* (internal quotation marks omitted); *see also Mich. United Food & Comm. Workers Union & Drug Emps. v. Muir Co.*, 992 F.2d 594, 597-98 (1993) (applying the discovery rule to an ERISA § 502(a)(3) claim). As such, the three-year statute of limitations accrued, at the latest, on October 20, 2007, the date when Williams allegedly first received a copy of the January 11 letter terminating his LTD benefits. Williams did not file suit until July 18, 2011, which is nearly nine months after the expiration of the statute of limitations.

Because we find that Williams' claim is time-barred we will not discuss the merits of MetLife's decision to terminate Williams' LTD benefits.

**III.**

For these reasons, we must AFFIRM the decision of the district court.