NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0798n.06

No. 14-5283

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DUBLIN EYE ASSOCIATES, P.C., et al., | ) | |
| | ) | **FILED** |
| Plaintiffs-Appellants, | ) | Oct 22, 2014 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MASSACHUSETTS MUTUAL LIFE INSURANCE | ) | COURT FOR THE EASTERN |
| COMPANY, et al., | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: GIBBONS and KETHLEDGE, Circuit Judges; DOW, District Judge.[*]

KETHLEDGE, Circuit Judge: For 18 years, the trustees of Dublin Eye's pension plan let Thomas Ackerman, their Mass Mutual insurance agent, manage the plan's investments. And for most if not all of those years, the plan's trustees—the plaintiffs here—received invoices and other documents indicating that the plan was purchasing vastly more life-insurance policies than Ackerman had told them it would. But the plaintiffs never read any of those documents. When, in 2007, the plaintiffs finally did catch on to this discrepancy, they waited almost four years to bring this ERISA suit. Thus, the district court held that the plaintiffs' claims are time-barred. We agree, and affirm.

---

[*] The Honorable Robert M. Dow, Jr., Judge for the Northern District of Illinois, sitting by designation.

I.

We view the evidence in the light most favorable to Dublin Eye, the non-movant for summary judgment here. *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 433 (6th Cir. 2009). Dublin Eye established a pension plan with Mass Mutual in 1980. Per the plan documents, Dublin Eye's two ophthalmologists, Roger Smith and James Jones, were the plan's trustees; Smith was the plan's administrator. Catherine Chatfield, Kim Shea, and Qualified Plan Services, Inc. assisted at different times as third-party administrators.

The doctors allowed Thomas Ackerman—their Mass Mutual agent, close friend, and Smith's cousin—to make all investment decisions for the plan. Ackerman falsely told the doctors that Mass Mutual required the plan to spend 10% of its assets on life insurance. He also told the doctors that the plan would purchase one or two policies for each of the plan's participants. Without the doctors' knowledge, however, Ackerman sold as many as ten policies per participant to the plan, all from Mass Mutual. Ackerman also sold annuities to a separate, defined-benefits plan that Dublin Eye maintained alongside its pension plan. To obtain some of the signatures needed to authorize these sales, Ackerman asked the doctors to sign blank application forms, which they did. Ackerman also allegedly forged the doctors' signatures on other documents.

For years thereafter, Mass Mutual mailed invoices for all these policies to Dublin Eye. Each of the invoices—including one for $90,500—listed all of the policies the plan had purchased, along with the name of the person insured by each policy. For example, an invoice from 1994 listed ten policies for Anita Mallory, the office manager, another six policies for her husband, and as many as nine policies for the other plan participants. But the doctors never looked at these invoices. Instead, only Mallory handled them. Her practice was to forward the

invoices to Dublin Eye's accountant, then adjust the amount of payment per the accountant's instructions, prepare a check for the final amount, detach the payment coupon from the invoice, and present the check and coupon to a doctor for approval. Mallory kept the old invoices in her office.

Dublin Eye also received numerous other documents related to the plan, including cost-of-insurance reports, account statements, and annual reports. In addition, Ackerman visited Dublin Eye several times a year, bringing with him banker's boxes filled with documents, forms for the doctors to sign, or reports on the plan's investments. Some of these documents showed the number of policies that the plan had purchased for each participant. But again the doctors rarely read anything, so the papers usually sat in Smith's office until Ackerman threw them out. Eventually, Ackerman stopped bringing as many documents.

In addition to paying invoices, the doctors occasionally signed forms concerning the policies and annuities. In 1996, for example, Smith signed forms allowing two employees to surrender a total of ten life-insurance policies. In 1999, Smith and Jones signed forms authorizing the surrender of nine life-insurance policies in Smith's name. On another occasion, Jones signed a document authorizing certain changes to all policies "shown in the attached Schedule Page[.]" R. 265-38, Authorization for Amendment. The schedule page, which Jones says he does not remember seeing, listed every policy owned by the plan.

In 1998, the plan participants assumed control of their own investments—at which point Ackerman left Mass Mutual to partner with a broker and to sell other investments (stocks, bonds, mutual funds) to the plan participants. A few years later, Ackerman's partnership dissolved; and Ackerman failed to provide the trustees with information needed for a report. The trustees asked Ackerman's former partner to investigate. In 2007, he reported that the plan owned 50 life-

insurance policies—more than double the number that he expected to find. The trustees complained to Mass Mutual, but its internal investigation uncovered no wrongdoing.

More than four years later, in 2011, Dublin Eye, Smith, and Jones sued Mass Mutual, Ackerman, and the plan's third-party administrators. (We refer to the plaintiffs as Dublin Eye and the defendants as Mass Mutual.) In the second amended complaint, Dublin Eye alleged that Mass Mutual violated its fiduciary duties under ERISA, by misstating material facts concerning the life-insurance policies, wrongfully profiting from the policies' sale, and fraudulently inducing the plan to buy the policies and annuities, among other things.

The district court later dismissed certain of Dublin Eye's claims that were based on fraud, holding that the claims were not pled with sufficient particularity. Dublin Eye responded by moving for leave to file a third amended complaint after the court's deadline for amendment of pleadings. The district court denied the motion, finding that Dublin Eye had been dilatory and that an amendment would prejudice Mass Mutual. The district court thereafter granted summary judgment to Mass Mutual on all remaining claims, holding they were time-barred. This appeal followed.

## II.

We review the district court's grant of summary judgment de novo. *Montell v. Diversified Clinical Services*, 757 F.3d 497, 503 (6th Cir. 2014).

## A.

Dublin Eye's principal argument is that its ERISA claims for breach of fiduciary duty—based upon Ackerman's sale to the plan of multiple life-insurance policies per member—are not time-barred. Normally, an ERISA claim for breach of fiduciary duty must be brought no later than six years after the breach itself, or three years after the plaintiff has actual knowledge of the

breach, whichever is earlier. 29 U.S.C. § 1113. "[I]n the case of fraud or concealment," however, the statute's so-called discovery rule extends the filing deadline to "six years after the date of discovery of such breach or violation." *Id.*

Here, Dublin Eye waited more than three years after it actually knew of the alleged breach in 2007 to bring suit. The district court assumed without deciding, however, that the six-year discovery rule for "fraud or concealment" applies here. We make the same assumption for purposes of this appeal.

The discovery rule's six-year period runs from the date when a reasonably diligent plaintiff would have discovered the breach, not from when the plaintiff actually did so. *Med. Mut. of Ohio v. k. Amalia Enterprises Inc.*, 548 F.3d 383, 391 (6th Cir. 2008). Here, for several reasons, the district court found that Dublin Eye should have known about the unauthorized life-insurance sales at least six years before it brought this lawsuit. We need only discuss two of those reasons here.

First, for many years, Dublin Eye received invoices that plainly showed that the plan owned as many as ten policies per participant. Dublin Eye argues that this fact does not matter because none of the doctors—the plan's trustees—even looked at the invoices; only their office manager, Mallory, did. But a person—much less an ERISA trustee—who receives a document is presumed to have knowledge of its contents. *See Brown v. Owens Corning Inv. Review Committee*, 622 F.3d 564, 571–72 (6th Cir. 2010). And the law provides no exception to this rule for people who say they are too busy to read what is sent to them.

Second, the district court found that the doctors should have known about the plan's purchases of excess policies on the numerous occasions when the doctors signed forms surrendering them—including on one occasion when they signed forms surrendering nine

policies for Smith alone. Dublin Eye responds that the doctors signed blank surrender forms. To state that argument is to answer it. A reasonably diligent plaintiff would have discovered the basis of these claims years before the plaintiffs did here. The district court properly held that Dublin Eye's ERISA claims are time-barred.

B.

Dublin Eye argues that the district court failed to discuss its annuity-based claims when it granted summary judgment to Mass Mutual. By that point, however, the district court had already dismissed those claims on grounds that they were not pled with sufficient particularity in the second amended complaint. *See* Fed. R. Civ. P. 9(b). Thus, by the time the district court granted summary judgment, there were no annuity-based claims left to discuss.

Dublin Eye's final argument is related: that the district court should have allowed them to file a third amended complaint after the deadline set forth in the court's scheduling order for amendment of pleadings. But Dublin Eye is not entitled to an exception from this deadline either. The third amended complaint was based upon facts and law that were available to Dublin Eye well before the amendment deadline. The district court did not abuse its discretion by enforcing its scheduling order. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).

Affirmed.