**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1195n.06

No. 11-2444

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Nov 20, 2012*
DEBORAH S. HUNT, Clerk

MARILYN HOUSTON, )
)
    **Plaintiff-Appellant,** )
)
v. )
) ON APPEAL FROM THE
U.S. BANK HOME MORTGAGE ) UNITED STATES DISTRICT
WISCONSIN SERVICING, a wholly ) COURT FOR THE EASTERN
owned subsidiary of U.S. BANK, NA, ) DISTRICT OF MICHIGAN
)
and )
) **O P I N I O N**
GARY HEIDEL, Executive Director )
of the Michigan State Housing )
Development Authority, )
)
    **Defendants-Appellees.** )
_____ )

Before: MOORE and COLE, Circuit Judges, and ROSE, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Marilyn Houston

challenges the grant of summary judgment to Defendants-Appellees U.S. Bank Home Mortgage

Wisconsin Servicing ("US Bank") and Gary Heidel, the Executive Director of the Michigan State

Housing Development Authority ("MSHDA"). Although we conclude that the district court was

correct in finding that US Bank's admitted violation of the Real Estate Settlement Procedures Act

("RESPA") did not cause Houston's foreclosure, we **REVERSE** and **REMAND** on the narrow issue

_____

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of
Ohio, sitting by designation.

of what damages, if any, arose out of US Bank's RESPA violation. We **AFFIRM** the grant of summary judgment on all other counts.

## I. BACKGROUND & PROCEDURE

Houston secured a mortgage to purchase a home in August 2001. R. 17-3 (Mortgage) (Page ID #286–92). In November 2003, Houston filed a Chapter 13 petition in the United States Bankruptcy Court for the Eastern District of Michigan. R. 17-4 (Trustee Report) (Page ID #294). By then MSHDA owned Houston's mortgage, and MSHDA filed claims for both the underlying loan and for $2,542.85 in prepetition arrearage. The bankruptcy court confirmed Houston's plan in March 2004. *Id.* The Trustee paid MSHDA's arrearage claim in its entirety, and made monthly payments on the mortgage. R. 30-3 (Case Overview at 8–10) (Page ID #433–35). The Trustee directed mortgage payments to US Bank when it took over servicing Houston's loan.

On May 27, 2009, the Trustee filed notice with the bankruptcy court confirming that Houston "is in all respects current" with regard to "any secured claim that continues beyond the term of the plan." R. 5-8 (Trustee Notice at 1–2) (Page ID #121–22). The notice was also sent to Houston, and instructed her to "[i]mmediately begin making the required payments on secured debt obligations." *Id.* at 1 (Page ID #121). The bankruptcy court ordered Houston's discharge on July 7, 2009.[1] R. 17-

---

[1]The full timeline surrounding the bankruptcy proceedings is as follows. The Trustee made its final payment to US Bank on March 4, 2009. R. 30-3 (Case Overview at 9) (Page ID #434). The Trustee identifies March 4, 2009 as the proposed closing date of the plan, *id.* at 1 (Page ID #426), but March 11, 2009 as the actual date of completion. R. 17-1 (Trustee Report) (Page ID #294). The automatic deduction from Houston's bank account ended on March 24, 2009, and the Trustee refunded Houston $1,252.30 on April 23, 2009. R. 30-3 (Case Overview at 6–7) (Page ID #431–32).

6 (Order) (Page ID #300–01).  It is uncontested that Houston did not begin to make mortgage payments, and she has made no payments since May 2009.  *See* R. 30-4 (Payment History at 1–4) (Page ID #446–49).

US Bank's statement to Houston, dated July 17, 2009, indicated that she owed a current payment of $742.09, and also $2,226.27 in past-due payments and $15.74 in late charges.[2]  R. 17-7 (US Bank Statement) (Page ID #303).  Houston states that US Bank's representatives "would not address [her] payment amount dispute," but informed her that she owed the alleged amount.  R. 33-3 (Houston Aff. ¶ 6) (Page ID #543).  On August, 19, 2009, Houston sent a certified letter disputing "the amount that is owed according to the [July 2009] Monthly Billing Statement," and requesting "information about the fees, costs and escrow accounting on [her] loan."  R. 17-8 (Letter) (Page ID #305–06).  Houston's letter constituted a qualified written request ("QWR"), which under RESPA obligated US Bank to acknowledge receipt within twenty days and, among other things, to investigate and address her request within sixty days.  12 U.S.C. § 2605(e).  US Bank admits that it failed to respond.  Appellee Br. at 15.

US Bank attempted unsuccessfully to contact Houston by phone, by mail in March 2010, and again by mail in April 2010 regarding her outstanding payments.  R. 30-6–8 (US Bank Correspondences) (Page ID #472–80).  On June 3, 2010, US Bank informed Houston that it would

---

[2]The past-due amount of $2,226.27 is equal to three payments of $742.09.  On the record presented, neither Houston nor the Trustee made monthly payments of $742.09 for April, May, or June. US Bank claims in its summary judgment briefs to the district court that these non-payments account for the past-due amount.  *See* R. 30 (Mot. for Summ. J. at 3–4) (Page ID #412–13).

commence foreclosure proceedings. R. 30-9 (Foreclosure Letter) (Page ID #482). Due notice was published and provided to Houston. R. 30-10 (Merithew Aff.) (Page ID #484); R. 30-11 (Blanchette Aff.) (Page ID #486). After sending her QWR, Houston did not contact US Bank until she filed this suit on August 16, 2010—two days before the scheduled foreclosure sale—in Wayne County Circuit Court. R. 1 (Removal Notice at 1) (Page ID #1). However, because Houston did not file a motion seeking to stay the foreclosure proceedings, the house was sold at auction to MSHDA. R. 30-13 (Foreclosure Sale at 3) (Page ID #492). Nor did Houston exercise her statutory right to redeem within the six months following a foreclosure sale. *See* MICH. COMP. LAWS § 600.3240 (2012).

This suit was removed to the U.S. District Court for the Eastern District of Michigan in September 2010. On May 2, 2011, the district court dismissed five of Houston's claims, and allowed her RESPA and wrongful-foreclosure claims against US Bank to proceed. *Houston v. U.S. Bank Home Mortg. Wis. Servicing* (*Houston I*), No. 10-13780, 2011 WL 1641898 (E.D. Mich. May 2, 2011) (unpublished opinion). Houston later amended her complaint to include a breach-of-contract claim against MSHDA. On October 14, 2011, the district court granted summary judgment to US Bank and MSHDA on all three remaining claims. *Houston v. U.S. Bank Home Mortg. Wis. Servicing* (*Houston II*), No. 10-13780, 2011 WL 4905533 (E.D. Mich. Oct. 14, 2011) (unpublished opinion). Houston timely appealed.

We review de novo a grant of summary judgment. *Med. Mut. of Ohio v. K. Amalia Enters. Inc.*, 548 F.3d 383, 389 (6th Cir. 2008). Summary judgment is appropriate where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.

R. Civ. P. 56(a). We consider "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In doing so, we draw reasonable inferences in favor of the non-movant when determining whether there is a "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citations omitted).

## II. RESPA CLAIM

RESPA allows an individual to recover for a violation of its terms as follows:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>> (1) . . . In the case of any action by an individual, an amount equal to the sum of—
>>> (A) *any actual damages to the borrower as a result of the failure*; and
>>> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

§ 2605(f) (emphasis added). Houston argues that US Bank violated § 2605(e) of RESPA when it failed to acknowledge her August 2009 QWR or to correct its records accordingly (see *infra* note 4); according to Houston, these failures by US Bank resulted in an "illegal foreclosure based on an erroneous debt, the attempted wrongful sale of her property, along with financial damages and emotional distress."[3] R. 16 (Am. Compl. ¶ 33) (Page ID #273). US Bank did not fulfill any of its

[3]It is not clear whether Houston still seeks to set aside her foreclosure, or whether she seeks merely compensatory damages for the sale. RESPA permits actual damages, plus costs and attorneys

§ 2605(e) duties.[4]   As a result, the district court focused its attention on whether Houston's

foreclosure was a result of US Bank's RESPA violation.  The district found that it was not—it held

that Houston's continued non-payment of her mortgage, rather than US Bank's violation, caused her

foreclosure.  *Houston II*, 2011 WL 4905533, at *5–6.

There is no genuine dispute that Houston owed monthly mortgage payments to US Bank, and

that she made no payments from May 2009 forward.  The Trustee instructed Houston in May 2009

to "[i]mmediately begin making the required payments on secured debt obligations."  R. 5-8 (Trustee

Notice at 1) (Page ID #121).  Even accepting as true her allegation that the Trustee's order was not

effective before the July 2009 discharge—a claim that is at odds with the plain text of the order

itself—it remains undisputed that Houston made no mortgage payments from July 2009 forward.

Nor does Houston claim that RESPA excuses individuals from making mortgage payments while

awaiting a QWR response.  This evidence is sufficient to conclude that Houston's intervening

conduct severed whatever causal chain may have connected US Bank's violation to her foreclosure.

Against this conclusion, Houston offers two explanations as to how US Bank's RESPA

violation caused her foreclosure.  First, she claims that, according to § 2605(k), US Bank's failure

---

fees, as a remedy in this instance, but it does not contemplate that a court could set aside a sale.  *See* § 2605(f).  Houston also seeks punitive damages, which are not identified under RESPA.  *See id.*

[4]Section 2605(e) requires, upon receiving a QWR, that a loan servicer "shall provide a written response acknowledging receipt of the correspondence within 20 days."  § 2605(e)(1)(A). Further, a loan servicer shall, within sixty days of receiving a QWR, "make appropriate corrections in the account of the borrower," "transmit to the borrower a written notification of such correction," and "provide the borrower with a written explanation or clarification" that includes details regarding its investigation and contact information for one of its employees or representatives.  § 2605(e)(2).

to respond to her QWR is prohibited "when this response could potentially avoid foreclosure."

Appellant Br. at 14.  We do not consider this argument because § 2605(k) is not yet effective law.

Section 2605(k) was created in Title XIV of the Dodd-Frank Wall Street Reform and Consumer

Protection Act.  *See* Pub. L. No. 111-203, § 1463, 124 Stat. 1376, 2182–84 (2010) [hereinafter

Dodd-Frank Act].  The effective date for Title XIV is determined as follows:

> (2) EFFECTIVE DATE ESTABLISHED BY RULE.  Except as
> provided in paragraph (3), a section, or provision thereof, of this title
> shall take effect on the date on which the final regulations
> implementing such section, or provision, take effect.
> (3) EFFECTIVE DATE.  A section of this title for which regulations
> have not been issued on the date that is 18 months after the
> designated transfer date shall take effect on such date.

Dodd-Frank Act § 1400(c), 124 Stat. at 2136.  July 21, 2011 marks the designated transfer date for

Title XIV.  Designated Transfer Date, 75 Fed. Reg. 57252-02 (Sept. 20, 2010).  Accordingly,

§ 2605(k) becomes effective on the earlier of January 21, 2013 or the date of a final regulation

implementing it.  No final regulation has yet implemented § 2605(k).  *Cf. Bates v. JPMorgan Chase

Bank, N.A.*, No. 4:12-cv-43, 2012 WL 3727534, at *4 (M.D. Ga. Aug. 27, 2012) (dismissing a claim

brought under § 2605(k) because the statute was not yet effective).

Second, Houston asserts that, had she "discovered that there was an arrearage, . . . she would

have been able to avail herself to [sic] HUD counseling and intervention on her behalf to prevent a

foreclosure."  Appellant Br. at 14–15.  However, this claim does not address the argument that

Houston's intervening non-payments were sufficient to cause her foreclosure even absent the

arrearage; her statement takes as a premise that the disputed arrearage caused the foreclosure.  Nor

7

is it clear how this assertion satisfies causation on its own terms. Houston implies that she would

have sought HUD counseling and intervention, but that US Bank's violation somehow precluded her

from doing so.[5]  But she does not suggest that she actually sought counseling, and she offers nothing

to suggest that counseling was unavailable in the absence of a response from US Bank. Nor does

Houston explain how she had not "discovered" the arrearage when it appeared on her July 2009

statement and it was confirmed in a phone call by US Bank's representatives, even if she contested

its accuracy. We conclude that there is no genuine dispute that, by virtue of Houston's continued

non-payment of undisputed debts, US Bank's RESPA violation did not result in her foreclosure.

Nevertheless, the district court was too quick to grant summary judgment against the entirety

of Houston's RESPA claim. There is little discussion in the court's orders below of the nature of

US Bank's RESPA violation, or of what damages—outside of foreclosure—may have resulted.

---

[5]At best, Houston's argument could be interpreted to suggest that she did not know what amount to pay, and would have made payments to US Bank had she known what to pay. This interpretation, however, runs into problems. First, US Bank did confirm the payments owed by Houston over the phone in July 2009, although she disputes its accuracy; it is not clear what Houston expects would have happened if US Bank had reconfirmed the arrearage in response to her QWR.

Second, it does not appear that Houston contests the monthly payments going forward—her dispute in litigation has been with the arrearage identified on her July 2009 statement. In earlier briefing Houston suggested that this obligation, but not the arrearage, was accurate. *See* R.7 (Resp. to Mot. to Dismiss at 10) (Page ID #135) ("Plaintiff's payment was increased from $ 742.09 to $2,999.84."). Moreover, Houston does not dispute that US Bank informed her and the Trustee in February 2009 that monthly payments would be for $742.09, or that US Bank provided a breakdown of what that payment would cover. R. 5-6 (Notice of Adjustment) (Page ID #110–16); *see also* R. 5-7 (Trustee's Notice) (Page ID #118). Houston comes closest in her QWR to disputing specifically the $742.09 amount when she requested "an explanation of how the amount due on the Monthly Billing Statement ($742.09) was calculated." R. 17-8 (Letter) (Page ID #305). But requesting an explanation for how a payment amount is calculated does not amount to disputing the present payment due.

Houston also alleges financial and emotional damages arising from the violation, which the district court did not address.[6] She has averred that she suffered "stress, mental anguish, embarrassment, and humiliation," because of US Bank's violation, and not merely because of the foreclosure. R. 33-3 (Houston Aff. ¶ 14) (Page ID #544). We conclude that there is a genuine issue of material fact as to whether Houston suffered damages as a result of US Bank's RESPA violation. Accordingly, we remand for a determination of what damages, if any, can fairly be traced to US Bank's RESPA violation.

### III. WRONGFUL-FORECLOSURE CLAIM

Houston challenges the validity of the foreclosure. The district court, relying on an unpublished Michigan Court of Appeals opinion, found that Houston lacked standing to contest her foreclosure once the statutory redemption period expired. *See Houston II*, 2011 WL 4905533, at *6 (discussing *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009) (unpublished opinion)). We disagree that Houston lacks standing to press her claim. Federal district courts have split over whether the plaintiff in *Overton* lacked standing—a possibility mentioned in, but not analyzed by, the Michigan Court of Appeals—or whether instead the plaintiff lost his claim on the merits. *See, e.g.*, *Hana v. Wells Fargo Bank*, No. 11-14442, 2012 WL 1694643, at *3 n.5 (E.D. Mich. May 15, 2012) ("Most courts in this District have analyzed the issue [in *Overton*] as one of standing, but some have noted that Article III standing is not in question

---

[6]We find nothing in the text of § 2605(f), or in RESPA more broadly, to preclude "actual damages" from including emotional damages, provided that they are adequately proven.

and the issue is more appropriately addressed as one attacking the merits of the claim."). We conclude that *Overton*'s holding does not turn on standing doctrine, because such an interpretation appears to be contrary to Michigan law. *See Mfrs. Hanover Mortg. Corp. v. Snell*, 370 N.W.2d 401, 404 (Mich. Ct. App. 1985) ("The Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in the summary proceeding."); *see also* MICH. COMP. LAWS § 600.5714(1)(g) (authorizing summary proceedings after redemption).

Nevertheless, the district court was ultimately correct to grant summary judgment to US Bank. "The right to redeem from a foreclosure sale is a statutory right that . . . can neither be enlarged nor abridged by the courts." *Detroit Trust Co. v. Detroit City Serv. Co.*, 247 N.W. 76, 87 (Mich. 1933). Michigan's redemption statutes make no exception either for late redemption, *see* § 600.3240(8) (establishing a six-month redemption period), or for the consequence of failing to redeem. *See* § 600.3236 ("Unless the premises described in [a sheriff's deed] shall be redeemed within the time limited for such redemption . . . [the deed] shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had.").

Because she is outside of the redemption period, Houston can undo the divestment of her property right only if there was fraud, accident, or mistake. *Senters v. Ottawa Sav. Bank, FSB*, 503 N.W.2d 639, 643 (Mich. 1993) (stating that § 600.3240 "specifies the requirements for redemption, leaving no room for equitable considerations *absent fraud, accident, or mistake*"); *accord* Appellant Br. at 20. In particular, there must be a clear showing of fraud or irregularity as to the foreclosure proceeding itself, and not simply as to any conduct by a defendant. *See Freeman v. Wozniak*, 617

10

N.W.2d 46, 49 (Mich. Ct. App. 2000) (finding no equitable grounds for relief where a plaintiff, due to mental inability, never received notice of a foreclosure whose "procedure was technically proper"). The district court found, and Houston does not contest on appeal, that "Plaintiff does not show that there was fraud, accident, or mistake related to the foreclosure proceedings specifically." *Houston II*, 2011 WL 4905533, at *6. Accordingly, Houston's wrongful-foreclosure claim fails.

## IV. BREACH-OF-CONTRACT CLAIM

Houston argues that MSHDA, through its Executive Director Heidel, failed to "engage in loss mitigation actions for the purpose of providing an alternative to foreclosure." 12 U.S.C. § 1715u(a). Houston agrees that § 1715u does not create a private right of action, but argues instead that the terms of § 1715u were incorporated into her mortgage contract with MSHDA. R. 16 (Am. Compl. ¶¶ 56–63) (Page ID #277–78). The district court found that Michigan's preexisting-duty rule precludes enforcement of § 1715u through contract law. We agree.

The parties do not dispute that Michigan law governs this claim. Michigan contract law follows the preexisting-duty rule. *46th Circuit Trial Court v. Cnty. of Crawford*, 719 N.W.2d 553, 568 (Mich. 2006). Michigan courts extend the rule to cover preexisting statutory duties. *Gen. Aviation, Inc. v. Capital Region Airport Auth.*, 569 N.W.2d 883, 885 (Mich. Ct. App. 1997) (dismissing a breach-of-contract claim because "[a] pledge to undertake a preexisting statutory duty is not supported by adequate consideration"); *accord Alar v. Mercy Mem'l Hosp.*, 529 N.W.2d 318, 321–22 (Mich. Ct. App. 1995). Accordingly, Houston cannot claim that MSHDA's preexisting § 1715u obligations are enforceable by means of a breach-of-contract claim.

At oral argument, Houston argued that the preexisting-duty rule does not apply for two reasons: MSHDA's statutory duties under § 1715u were not owed to her, and she gave independent consideration—an adjacent section of the contract requires that she insure her mortgage note—in exchange for MSHDA's promise to obey § 1715u. Both arguments misunderstand the preexisting-duty rule. At issue is whether, at the time of formation, MSHDA offered something of legal value in exchange for Houston doing the same. MSHDA did not, because it could not; there is no legal value in MSHDA promising to perform a service that it was already required by law to perform. *Cnty. of Crawford*, 719 N.W.2d at 568 ("'Under the preexisting-duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise.'" (quoting *Yerkovich v. AAA*, 610 N.W.2d 542, 546 (Mich. 2000))). Finally, granting that Houston gave additional consideration for MSHDA's promise does not disrupt the conclusion that it could not amount to consideration.

Houston also argues that Heidel breached the implied covenant of good faith by violating express terms of the mortgage contract. The district court found that Michigan permits implied-covenant actions only where the manner of a party's performance under the contract is discretionary. *Houston II*, 2011 WL 4905533, at *8. Houston cites the same rule. Appellant Br. at 25 (quoting *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975)). Houston does not allege that Heidel had discretion in performing his § 1715u duties. *Cf.* § 1715u(a) (stating that "mortgagees *shall* engage in loss mitigation actions"). Indeed, her brief emphasizes the mandatory quality of § 1715u. *See, e.g.*, Appellant Br. at 28; *id.* at 30, 33, 35. Accordingly, there is no breach of the implied covenant of good faith.

## V. CONCLUSION

We **REVERSE** and **REMAND** for consideration of what damages may have resulted from

US Bank's RESPA violation, and **AFFIRM** the remainder of the district court's judgment.