**AFFIRM; and Opinion Filed June 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01634-CV

### PETER & NATALYA SHIN, Appellant
### V.
### CHASE HOME FINANCE, LLC, Appellee

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-01309-2010**

## MEMORANDUM OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice O'Neill

Appellants Peter and Natalya Shin appeal a summary judgment granted in favor of Chase

Home Finance, LLC (Chase). In three issues, appellants assert the trial court erred in granting

appellee's motion for summary judgment. For the following reasons, we affirm the trial court's

judgment.

In 2005, appellants purchased a home in McKinney, Texas. Chase[1] loaned appellants the

money for the purchase. Appellants signed a promissory note and executed a deed of trust to

secure the note. Appellants signed a "Waiver of Escrow Account" in which Chase agreed to

waive its right to establish an escrow account and collect monthly escrow payments to pay real

estate taxes and insurance premiums and appellants agreed to timely pay all real estate taxes and

---

[1] JPMorgan Chase Bank, N.A. was the lender and executed the loan documents. Chase Home Finance, LLC subsequently serviced the loan. JP Morgan Chase Bank then became the successor by merger to Chase Home Finance. In this appeal, appellee refers to both entities simply as "Chase." We will do likewise.

insurance premiums when due. If appellants did not do so, the agreement allowed Chase to establish an escrow account and collect monthly payments for the escrow account to pay for taxes and insurance.

Appellants failed to timely pay their 2008 property taxes when they were due on January 21, 2009. Six months later, on July 27, 2009, Chase paid the past due amount on behalf of the appellants. Chase also set up an escrow account and increased appellants monthly payments to recover the taxes Chase had paid and to collect for future tax payments. A few days after Chase paid the property taxes, appellants also paid them, resulting in an overpayment to the tax assessor.

When appellants were notified Chase was increasing their monthly mortgage payment, they discovered the double payment. On Chase's request, appellants sent Chase a receipt showing their July 2009 tax payment. Appellants also instructed Chase they would only pay the principal and interest due on the mortgage. Chase subsequently sent a letter to the tax assessor requesting the overpayment be refunded to it. When the 2009 taxes on the property became due, appellants timely paid them. However, Chase had also paid the 2009 property taxes because it had rescinded the escrow agreement. Thus, the taxes were again paid twice. Meanwhile, appellants continued to pay their initial mortgage payment of principal and interest, but not the increased payments Chase had required for the escrow account.

In early January 2010, Chase referred the note to its foreclosure attorney, and refused to accept appellants' January mortgage payment. On January 15, 2010, Chase notified appellants that their property was scheduled for foreclosure on March 2, 2010. Appellants immediately contacted Chase informing them they had paid both their monthly payments and tax payments. On January 27, 2010, Chase sent appellants a letter informing them it was investigating the matter. In early February, appellants called Chase again and Chase informed them it would "fix

the problem." On February 8, 2010, Chase sent appellants a letter notifying them they had "updated" their account and that Chase would no longer be collecting for escrow payments, but the letter also told appellants they had a "negative" escrow balance of $28,440.20 that was due. According to Chase, the $28,440.20 represented payments Chase had made to taxing authorities on behalf of appellants. The record is unclear as to the date Chase was refunded for the taxes it had paid on behalf of appellants. According to appellants, Chase was refunded the money before it instituted the foreclosure proceedings. Regardless, on February 9, 2010, Chase acknowledged the taxes had been refunded and credited the funds to appellant's account. On February 20, 2010, Chase notified appellants the foreclosure was rescinded, the loan was being reinstated, and that it had converted the loan back to non-escrow.

Appellants sued Chase asserting, among other things, it violated the Texas Debt Collections Practices Act (TDCPA) and had engaged in "unreasonable collection efforts." Chase filed a traditional and no-evidence motion for summary judgment on appellants' claims. In its no-evidence motion, it asserted appellants had no evidence Chase committed an act that violated the TDCPA and no evidence appellants were injured as a result of any violation of the Act. Chase also asserted appellants had no evidence it engaged in unreasonable collections efforts. The trial court granted Chase's motion without specifying its reasons. This appeal followed.

The standards for reviewing summary judgment are well established. *See* TEX. R. CIV. P. 166a(c), 166a(i); *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 553 (Tex. App.—Dallas 2006, no pet.). When a defendant moves for a no-evidence summary judgment, the burden is on the plaintiff to present evidence to raise a genuine issue of material fact on each of the challenged elements. TEX. R. CIV. P. 166a(i); *Gen. Mills Rest., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex. App.—Dallas 2000, no pet.). Evidence that is "so weak as to do no more than create a mere surmise or suspicion" does not raise a fact issue. *See McCoy*, 183 S.W.3d at

554. To raise a fact issue the evidence must rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *McCoy*, 183 S.W.3d at 554. Any doubts about the existence of a genuine issue of material fact are resolved against the movant, and all evidence and any reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 553.

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Because summary judgment is a question of law, we review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

In their first issue, appellants assert the trial court erred in granting Chase's motion for summary judgment on their claims under the TDCPA. They first assert they presented evidence showing Chase violated section 392.304(a)(8) of the TDCPA, which prohibits a debt collector from misrepresenting the character, extent, or amount of a consumer debt. *See* TEX. FIN. CODE ANN. § 392.304(a)(8) (West 2006). They rely on evidence that Chase posted their property for foreclosure after Chase had been refunded the tax payments Chase had paid on their behalf, yet claimed remained due. Specifically, according to appellants, Chase received the tax refund on December 30, 2009, fifteen days before posting the property for foreclosure. The only summary judgment evidence they direct us to support this claim is a December 30, 2009 "Original Receipt" from the tax assessor showing $11,777.79 was tendered. After reviewing the receipt, we cannot agree it shows Chase was refunded the tax overpayment on that date. Instead, we conclude the receipt shows the $11,777.79 was tendered and treated as an overpayment. We also note in his affidavit, appellant Peter Shin stated that he and his wife had received a letter from "the City of McKinney" stating "the City" had refunded the tax payment to Chase. This letter is

–4–

not in the summary judgment record.  Further, Shin does not state in his affidavit the date he received this letter or the date Chase was refunded the tax payment. Because appellant's contention that Chase misrepresented the character or extent of their debt is premised on its contention that Chase had been refunded the tax payment before posting the property for foreclosure, and there is no evidence to support that contention, we conclude they failed to raise a fact issue showing Chase violated Section 392.304(a)(8) of the TDCPA.

Appellants next assert Chase violated section 392.303(a)(2) of the TDCPA, which provides a debt collector may not "collect or attempt to collect" interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement or is legally chargeable to the consumer." *See* TEX. FIN. CODE ANN. § 392.303(a)(2) (West 2006).  To show Chase attempted to collect unauthorized fees, appellants rely on fees Chase applied to their loan in association with the foreclosure proceedings.  Appellants assert Chase was not authorized to charge these fees because "they were not in default of the contractual obligations."  To show they were not in default, appellants rely on evidence that they ultimately paid their taxes, were current on their homeowners insurance, and made all their monthly payments of principal and interest on the note.

The waiver of escrow agreement required appellants make their tax payments timely and before any penalties were assessed.  If appellants failed to do so, Chase was permitted to set up an escrow account.  It is undisputed that appellants did not pay the taxes when due and were assessed penalties for their failure to do so.  It is also undisputed that Chase paid appellants' taxes and the penalties assessed.  After it did so, appellants refused to pay the increased monthly payment to cover the escrow for taxes.  Appellants have made no effort to show Chase's action in creating the escrow account, thereby increasing their monthly payments, was not authorized under the specific terms of the applicable agreements.  Nor have appellants made any effort to

show the foreclosure proceedings were otherwise unlawful. This Court has "no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error." *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012, pet. denied). We conclude appellants have failed to show they raised a fact issue showing the complained-of charges were unlawful.

We also conclude appellants failed to raise a fact issue that Chase ever collected or attempted to collect the complained-of fees. To raise a fact issue, appellants rely on the "transaction history" of the note showing that a "Misc. Foreclosure and Bankruptcy Expense" of $14 was twice applied to their account. According to appellants', the transaction history raises a fact issue because when a fee is "applied" to an account, the creditor is "expecting" payment and is therefore "attempting" to collect the fee. However, there is no evidence Chase ever requested payment for the complained-of fees. Further, appellants admit Chase ultimately "corrected" their account. We conclude there is no evidence Chase attempted to collect the fees from appellants.

Appellants next assert Chase violated Section 392.301(a)(8) of the TDCPA which provides a debt collector may not "threaten" an action "prohibited by law" in collecting a debt. According to appellants, Chase threatened an action that violated a federal statute. Specifically, appellants assert Chase threatened violation of the Mortgage Reform and Anti-Predatory Lending Act of 2010 by (1) "forcing" appellants to obtain force-placed hazard insurance, and (2) failing to take "timely" action to respond to a borrowers request to correct errors and to avoid foreclosure. See 12 U.S.C.A. § 2605(k). We have reviewed appellants' petition carefully and, even giving it the most liberal construction, we conclude they did not allege any claims based on these violations of the federal statute. Indeed, the provisions appellants assert were violated were not even in effect when they filed their petition. The Mortgage Reform and Anti-Predatory Lending Act is part of the Dodd-Frank Act. The general effective date of the Dodd-Frank Act

was July 22, 2010. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, PL 111-203, July 21, 2010, 124 Stat 1376. The particular provisions of the act appellants assert were violated were created in Title XIV of the act which only went into effect the earlier of January 21, 2013 or on the date of a final regulation implementing its provisions. *See Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 Fed. Appx. 543, 547 (6th Cir. 2012). Regardless, the very earliest date these provisions could have been effective was after the complained-of actions. *See Hummel v. Hall*, 868 F. Supp. 2d 543, 549-50 (W.D. Va. 2012) (explaining effective date provisions of the Dodd-Frank and Mortgage Reform Acts); *see also Smith v. JPMorgan Chase Bank, N.A.*, 519 Fed. Appx. 861, 864 n.1 (5th Cir. 2013) (RESPA amendments did not bind Bank's actions that occurred before effective date of amendment). We conclude appellants have failed to raise a fact issue showing Chase threated a violation of federal law. We resolve the first issue against appellants.

In their second issue, appellants contend the trial court erred in granting Chase's motion for summary judgment on its claim for unfair collection efforts. Unreasonable collection is an intentional tort. *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 868–69 (Tex. App.—Dallas 2008, no pet.). Although the elements of the tort have not been clearly defined, in *EMC Mortgage Co. v. Jones*, we stated that "[o]ne of the more precise legal descriptions delineates the conduct giving rise to the tort as 'efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'"[2] *EMC Mort. Corp*, 252 S.W.3d at 869.

---

[2] According to appellants, we rejected this definition in *EMC Mortgage* because we refused to apply it to the plaintiff's claims in that case. Appellants misconstrue our holding. We did not reject the definition, but we refused to apply "the correct legal standard" in assessing the evidence to support a jury verdict because the jury was not provided that definition in the charge and there was no properly preserved or presented charge error. *EMC Mort. Corp*, 252 S.W.3d at 869.

To raise a fact issue showing Chase's collection efforts were "willful, wanton, or malicious," they rely on evidence that Chase improperly posted their property for foreclosure when they were not in default and after Chase had received the tax refund. We have previously concluded the summary judgment evidence does not support these contentions. Nor is there any summary judgment evidence that Chase had the intent to inflict bodily harm or mental anguish on appellants. Although appellants presented summary judgment evidence that appellant Natalya Shin suffered emotional and physical injuries from the stress of the foreclosure proceedings, we cannot agree the evidence, even viewed in the light most favorable to appellants, gives rise to a reasonable inference that it was Chase's intent to cause her such injuries. We conclude appellants' failed to raise a fact issue to support their claim of unreasonable collection efforts. We resolve the second issue against appellants. Because of our disposition of these issues, we need not reach appellants' third issue.

We affirm the trial court's judgment.


/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE


121634F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

PETER & NATALYA SHIN, Appellant

No. 05-12-01634-CV          V.

CHASE HOME FINANCE, LLC, Appellee

On Appeal from the 416th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 416-01309-2010.
Opinion delivered by Justice O'Neill.
Justices Lang-Miers and Evans participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

     It is **ORDERED** that appellee CHASE HOME FINANCE, LLC recover its costs of this appeal from appellant PETER & NATALYA SHIN.

Judgment entered this 30th day of June, 2014.