NOT DESIGNATED FOR PUBLICATION

No. 113,920

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EQUITY BANK,
*Appellee,*

v.

KAREN M. WADDELL and MIKE WADDELL,
Wife and Husband,
*Appellants.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TIMOTHY H. HENDERSON, judge. Opinion filed February 10, 2017. Affirmed.

*Michael Jilka*, of Nichols Jilka LLP, of Lawrence, and *Eric D. Bruce*, of Bruce & Lehman, LLC, of Wichita, for appellants.

*Martin R. Ufford*, of Hinkle Law Firm LLC, of Wichita, for appellee.

Before GARDNER, P.J., ATCHESON, J., and STUTZMAN, S.J.

*Per Curiam*: Karen and Mike Waddell (Waddells) appeal the Sedgwick County District Court's failure to award them the damages, interest relief, and attorney fees demanded in the claims they asserted in the foreclosure against their home by Equity Bank (Equity). We find no error by the district court and affirm.

FACTS AND PROCEDURAL BACKGROUND

Karen Waddell (Karen) gave her promissory note to Equity for a loan in the principal sum of $187,064. That debt was secured by a mortgage on the Waddells' home in Derby, Kansas. Equity sold the loan in the secondary market to Wells Fargo, and the Waddells began to pay Wells Fargo in November 2008. In April or May 2009, ownership of the loan went back to Equity. At the time of that transfer, Wells Fargo informed Equity that the principal balance was $186,035.

After the loan went back to Equity, there were occasions when the Waddells contacted the bank to work through issues with the loan, and it was modified on more than one occasion. Later it was thought that during those modifications a computational error was introduced, which created a significant obstacle in the relations between Equity and the Waddells. In December 2009, Equity told the Waddells the loan was no longer FHA insured and the refunded premium had been applied retroactively to the origination of the loan, resulting in an adjusted initial principal of $183,271, which was to be the new baseline figure for loan calculations.

In July 2012, the Waddells' house was destroyed by fire. After some negotiation, their insurer, Shelter Insurance Company (Shelter), offered to pay the Waddells their policy limit of $241,300. The Waddells wanted to rebuild their home, but in a letter dated September 21, 2012, an official from Equity informed them the bank had elected to exercise its rights under the mortgage to direct that the insurance proceeds be used to fully pay off the $188,894 balance owed on the loan that had been secured by the destroyed home. Any remaining insurance proceeds would be returned to the Waddells.

Karen Waddell responded that she and Michael had decided it was not in their interest to pay off the debt to Equity since they thought the interest rate would be too high on a new construction loan. In return, the bank reiterated its position that it would accept

no use of the insurance proceeds other than to pay off the loan. The Waddells nevertheless continued to press Equity to finance reconstruction of their home, and Karen applied for a construction loan. Equity denied her application, based on her credit score and other factors.

As they looked for construction financing, the Waddells also expressed doubts about the bank's calculation of the balance owed on the loan. That led to communications with Crayton Alldritt, an executive vice-president with Equity. In an email dated November 15, 2012, Alldritt told the Waddells that the loan's interest was high because of missed payments and because it "was set-up . . . for a balloon payment and in the interim the loan was on a negative amortization." The next day, Karen responded with a denial that she had missed any payments and she asked Equity Bank to provide her an itemized list of payments, interest, and escrow through the history of the loan.

In due course, Shelter paid the insurance proceeds to the Waddells in two checks, but the Waddells refused to tender any of those proceeds to Equity and, in March 2013, Equity filed suit for declaratory relief and to foreclose on its mortgage. The Waddells counterclaimed, asserting Equity was in breach of the terms of the mortgage; had violated the Truth in Lending Act, Kansas Consumer Protection Act, and Real Estate Settlement Procedures Act (RESPA); and had converted the insurance proceeds. Before the case went to trial, the Waddells withdrew their claims that Equity had violated the Truth in Lending Act and converted the insurance proceeds. By agreement of the parties in June 2013, the district court ordered Shelter to pay the insurance proceeds, totaling $241,300, to the clerk of the court, to be held pending further order.

Equity filed a motion for summary judgment on all claims, contending the terms of the mortgage gave it the option to require payment of the loan with the insurance funds, and asserting the Waddells breached their obligation under the mortgage to tender those proceeds to the bank. Consequently, Equity claimed it was entitled to accelerate the

3

payment of its loan, while acknowledging the Waddells' entitlement to any surplus funds. The district court declined to enter judgment for Equity on all claims but did grant partial summary judgment for the principal on the loan, which the court found was not disputed. The court ordered the clerk to pay Equity $171,426.84 from the insurance proceeds that had been deposited.

In the run-up to trial, the Waddells hired a certified public accountant to review the history of the loan to determine the accuracy of the balance Equity claimed was owed. When Equity reviewed the accountant's calculations, it found its own figures were off by approximately $10,000 in the Waddells' favor. At trial, a loan administrator for Equity testified the error resulted from the wrong amortization being used for the calculations. She noted that using a simple daily interest calculation likely would have revealed the error.

Karen Waddell testified that the loss of her home and the unsuccessful efforts to find a way to rebuild it were consuming concerns and "very hard," although she acknowledged some at Equity tried to help. She said it was stressful as the loan balance grew, and she experienced many sleepless nights and a facial rash that her physician thought was stress-related.

After considering the witness testimony and exhibits, the district court issued a judgment from the bench. It awarded Equity Bank $29,122.98: $14,729.76 for interest from July 2013; $1,608.82 for escrow balance shortage; $2,072.40 for late charges; and $10,712 for attorney fees and expenses. It awarded the Waddells the balance of the insurance proceeds, $40,750.18, and $55,134.56 for attorney fees, court costs, and expenses. It also awarded them reasonable attorney fees for any posttrial work.

In reaching its decision, the district court made several key findings. It found Equity continued with miscalculations until June 30, 2014, although "a simple daily

4

interest calculation by [Equity] when [the Waddells] disputed the amount owed would have caught the error." It determined the Waddells' October 2012 email to Alldritt, seeking information about why they owed more than the original principal amount, was a qualified written request as defined by RESPA. It found, in responding to the Waddells' qualified written request, Equity had failed to make a reasonable effort to investigate their concerns and, if Equity had reviewed the loan document, it would have discovered the loan was not a balloon interest payment loan. It concluded that by failing to adequately review the loan and mistakenly telling the Waddells that it was a balloon interest loan, Equity failed to respond to their qualified written request in the manner required by RESPA.

Although the district court concluded Equity violated RESPA, it denied the Waddells' related requests for damages. Specifically, it found Equity's RESPA violation did not result in additional loan interest during the pendency of their claim or cause Karen to experience emotional distress.

On November 3, 2014, both Equity and the Waddells moved the district court to alter or amend its judgment. The primary complaint by the Waddells related to the district court's award to Equity of $29,122.98 in damages for the interest accrued on the loan, escrow balance shortages, late charges, and a portion of Equity's attorney fees. They claimed any interest was a part of the damages they had suffered and that Equity was not entitled to attorney fees for any period in which it had miscalculated the loan balance. They asked for $28,924 in damages for past and future rental expenses. They also asserted that the district court should have awarded them damages for emotional distress and mental anguish.

It its motion, Equity contended the terms of the mortgage warranted a greater award for its attorney fees. It also argued for a reduction of the attorney fees awarded to

5

the Waddells on the premise they were entitled only to fees associated with their successful RESPA claim.

On December 29, 2014, the district court denied the Waddells' motion to alter or amend and adopted Equity's proposed findings and conclusions. That same day, in a separate order, it partially denied and partially deferred ruling on Equity's motion to alter or amend. It ordered the parties to attempt to reach an agreement regarding attorney fees and expenses, noting both parties incurred considerable attorney fees and expenses unrelated to the Waddells' RESPA claim.

On February 26, 2015, the district court issued a ruling from the bench on the remainder of Equity's motion to alter or amend and the Waddells' amended motion for posttrial attorney fees, a determination of expert witness fees, and other relief. The court denied the request by both parties for posttrial attorney fees, finding any such fees were unreasonable based on the parties' failure to work toward a resolution. It granted Equity's motion to alter or amend concerning the Waddells' expert witness fee, reducing it from $4,200 to $3,000 because only a portion of the fee related to their RESPA claim. The court granted Equity's motion to alter or amend the attorney fee awards for both parties, increasing Equity's award to $26,000 and reducing the award to the Waddells to $30,000, concluding the Waddells were entitled only to reasonable attorney fees associated with their successful RESPA claim. The Waddells timely appealed.

ANALYSIS

*The Waddells did not acquiesce in the district court's judgment*

In May 2015, Equity filed a motion with the district court for immediate disbursement of $11,410.98, the net in its favor from the judgments granted to Equity and the Waddells. The district court initially denied the motion because of the pendency of this appeal. On Equity's request for reconsideration, the district court set the motion for

6

hearing. At the hearing, the Waddells objected to the disbursement of funds by the court clerk and orally moved for approval of a supersedeas bond as a means to leave intact the funds held by the court. The district court granted Equity's motion and ordered immediate disbursement of the net judgment as requested. Because this appeal had been docketed, the district court found it lacked the authority to approve a supersedeas bond.

On October 1, 2015, Equity moved to dismiss the Waddells' appeal, claiming the Waddells acquiesced in the district court's judgment by failing to contest the disbursement of the net owed to Equity under that judgment. We denied the motion and directed the parties to brief the issue for later consideration.

Equity now argues the Waddells acquiesced in the judgment because they failed to obtain a stay or a supersedeas bond after the district court ordered the net judgment disbursed from the deposited funds. Equity also contends the Waddells did not contest the motion to disburse funds to the extent they claim.

Acquiescence in a lower court's judgment cuts off the right of appellate review. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006). "The gist of acquiescence sufficient to cut off a right of appeal is voluntary compliance with the judgment." *First Nat'l Bank in Wichita v. Fink*, 241 Kan. 321, 324, 736 P.2d 909 (1987). A party acquiesces when he or she voluntarily complies with a judgment by assuming the burdens or accepting the benefits of the judgment challenged on appeal. *Alliance Mortgage Co.*, 281 Kan. at 1271.

Equity relies on *Vap v. Diamond Oil Producers, Inc.*, 9 Kan. App. 2d 58, 671 P.2d 1126 (1983), to support its position that the Waddells acquiesced in the district court's judgment. In that case, Vap obtained a default judgment against Diamond Oil Producers, Inc. Diamond moved to set aside the default judgment. Before resolution of the motion, Vap initiated garnishment of Diamond's bank account, and the district court ordered

7

satisfaction of the default judgment. Then, after hearing oral arguments of the parties, the district court granted Diamond's motion to set aside the default judgment. Later, the district court reinstated the default judgment after Vap moved for a new hearing. At that point, Diamond appealed both the district court's reinstatement order and the original default judgment. 9 Kan. App. 2d at 59.

On appeal, a panel of this court held Diamond acquiesced in the default judgment and, therefore, waived its right to appeal. The panel first noted that, under K.S.A. 60-260(b), Diamond's motion to set aside the default judgment did not affect the judgment's finality or suspend its operation. 9 Kan. App. 2d at 61. The court also noted that, although Diamond was aware of Vap's intent to garnish, Diamond did not seek a stay of execution or post a supersedeas bond. "When faced with the choice of whether to pay the judgment or to attempt to halt the execution of judgment, [Diamond] affirmatively chose the former. Under the circumstances of this case, such action can only be viewed as voluntary." 9 Kan. App. 2d at 61.

Several years later, in *Younger v. Mitchell*, 245 Kan. 204, 777 P.2d 789 (1989), the Kansas Supreme Court considered a case on petition for review from a decision of this court that had relied on *Vap.* There, Younger obtained a default judgment against Mitchell in a negligence action. At Younger's request, the district court issued an order of garnishment to Mitchell's bank. Mitchell responded, contending the funds in his account were exempt from garnishment, and he requested a trial. In the meantime, Younger moved for an order requiring the bank to pay the funds into court and then for the court to distribute them to him. Both the trial and the motion were set to be heard on the same date.

Before the trial and motion hearing, the bank paid the funds into court. 245 Kan. at 205. After hearing evidence and argument, the district court ordered a portion of the funds paid to Younger and the remaining balance to Mitchell. 245 Kan. at 205-06. A

8

panel of this court dismissed Mitchell's appeal, finding he had acquiesced in the default judgment. 245 Kan. at 206. Relying on *Vap*, the panel held that Mitchell's failure to file a supersedeas bond and seek a stay of execution of the distribution order "amounted to voluntary payment and acquiescence in the judgment." 245 Kan. at 206.

The Kansas Supreme Court reversed the panel's decision, holding Mitchell did not acquiesce in the judgment from which he appealed. The court found the district court clerk's payment of the remaining funds to Mitchell did not constitute acceptance of a benefit of the judgment and, citing his various efforts to contest the garnishment proceedings, the court found Mitchell did not voluntarily comply with the district court's distribution order. 245 Kan. at 207-09. Although Mitchell did not seek a stay of execution or post a supersedeas bond, the court found Mitchell undertook efforts to halt execution of the default judgment by "diligently protest[ing] the garnishment proceeding." The court concluded Mitchell's conduct "did not indicate he had any intent to waive his legal right . . . to contest the garnishment of [his] bank account." 245 Kan. at 208-09.

In this case, the Waddells protested Equity's efforts to collect the net judgment and tried to prevent distribution of the net judgment by contesting Equity's motion for disbursement of the funds. They asked the district court to grant them leave to file a supersedeas bond to "keep[ ] the funds paid into court intact." Even though the district court ultimately denied their oral motion, the Waddells did not voluntarily pay the net judgment. Equity only received the funds after the district court ordered the clerk to pay out the net judgment.

The facts here align more closely with those in *Younger* than in *Vap*, and we conclude we have jurisdiction to consider the merits of the Waddells' appeal.

9

*The district court did not err when it denied the Waddells' claims for accumulated interest and emotional distress*

The Waddells contend the district court erroneously denied them damages for interest accrued on the loan while their RESPA claim was pending and for emotional distress experienced by Karen. In reviewing a judgment entered after a bench trial, we apply a bifurcated review standard. See *Kansas Health Care Stabilization Fund v. St. Francis Hospital*, 41 Kan. App. 2d 488, 503, 203 P.3d 33 (2009). We first assess whether the district court's factual findings were supported by substantial competent evidence and then determine whether those factual findings were sufficient to support the district court's legal conclusions, applying a de novo standard. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

Substantial competent evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Wiles v. American Family Assurance Co*., 302 Kan. 66, 73, 350 P.3d 1071 (2015). In evaluating the evidence supporting a district court's factual findings, we do not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

RESPA sets standards for the servicing of mortgage loans and the administration of escrow accounts. 12 U.S.C. § 2605 (2012). If a loan servicer—Equity, in this case—fails to fulfill its obligations under that section, it is liable to the borrower for "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A). The borrower has the burden to prove the servicer's RESPA violation caused his or her damages. See *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013) (to survive Rule 12[b][6] motion to dismiss claim under § 2605[e] of RESPA, plaintiffs must plead actual damages stemming from failure to respond to requests or a pattern or practice of misconduct).

*Damages for accrued interest*

The district court found the Waddells ignored the plain meaning of the terms of their loan documents concerning Equity's right to the insurance proceeds when fire destroyed their home. Citing *Houston v. U.S. Bank Home Mortgage Wisconsin Servicing*, 505 Fed. Appx. 543 (6th Cir. 2012) (unpublished opinion), the court stated when a homeowner fails to make mortgage payments, resulting in foreclosure, no causation exists between the RESPA violation and the foreclosure. The district court found the Waddells' mortgage default was independent of Equity's RESPA violation and concluded there was no causal relationship between the violation and the interest accrued on the loan.

The Waddells now argue Equity's calculation error forced them into "an untenable choice" between paying the incorrect loan amount and asserting their rights under RESPA, and they conclude, without citation to supporting authority, the proper recourse to keep Equity from profiting from its action was to stay any interest accrual during Equity's "inaction."

Equity responds that the district court appropriately relied on *Houston* in finding no causation between the RESPA violation and the loan's accrued interest. In *Houston*, a borrower alleged that a bank violated RESPA by failing to acknowledge a qualified written request and then failing to correct its records accordingly. The borrower further alleged the bank's violation resulted in an illegal foreclosure based on an erroneous debt, an attempted wrongful sale of her property, and financial and emotional distress damages. 505 Fed. Appx. at 546.

On appeal, the Sixth Circuit found there was no genuine dispute that the borrower owed monthly mortgage payments that she did not make, and she did not claim the bank's RESPA violation excused her from making mortgage payments while awaiting a

11

response to her qualified written request. The court further concluded there was no genuine dispute that because of the borrower's failure of payments the bank's RESPA violation did not result in the foreclosure. 505 Fed. Appx. at 546-48.

Here, the district court found that the Waddells' failure to turn over the proceeds from the insurance company as the mortgage required was independent of the violation of RESPA by Equity. Under paragraph nine of the mortgage, the Waddells defaulted if they failed to perform any obligation contained in the mortgage. Yet, following Equity's election under the mortgage to demand application of the insurance proceeds to the loan, the Waddells refused to turn over those proceeds. Noncompliance with the mortgage provisions permitted Equity to accelerate the loan and seek payment in full.

Although Equity's obdurate insistence on payment of the loan while it failed to verify the accuracy of the balance may have been unhelpful in moving the dispute toward a resolution, the district court found it did not cause the accrual of additional interest. That factual finding was supported by substantial competent evidence, and the finding was sufficient to support the conclusion that the Waddells' damage claim for the accrued interest should be denied.

*Damages for emotional distress*

The Waddells also challenge the district court's decision denying their claim for damages for Karen's emotional distress. They contend she presented uncontroverted testimony "that she developed a rash on her face as a result of the stress associated with the RESPA violation," and argue she was "placed in limbo" for almost a year and a half because of Equity's failure to respond to the written request they had submitted. They claim the district court's rejection of a causal connection between the violation and the emotional distress was error.

12

The record does not support the Waddells' statement that Karen developed a rash as a result of stress associated with Equity's RESPA claim. Karen testified she developed a rash on her face, which her doctor believed was due to stress. There is no evidence in the record that directly links the violation to the stress that led to the rash. Although the district court determined RESPA permitted damages for emotional distress, it concluded Equity's RESPA violation was not the cause of any emotional distress, and it further commented on the absence of evidence of any pecuniary damages relating to the alleged emotional distress.

Karen Waddell testified about her reactions to the understandably stressful situation created by the loss of their home to fire and the resulting displacement, as well as their difficulties in trying to find any common ground with Equity. But the record provides no evidence of a specific link between the RESPA violation and the emotional distress she claimed. Once again, the district court had substantial competent evidence for its finding that the Waddells did not show a link between the emotional distress claim and the regulatory violation. There was no error in failing to award damages for emotional distress.

*The district court did not commit error when it modified its initial attorney fees award and when it declined to award attorney fees for posttrial proceedings*

Finally, the Waddells appeal two decisions by the district court relating to awards for attorney fees. They first claim error when the district court modified its initial orders for attorney fees, raising the award to Equity and decreasing the award to the Waddells, and they further appeal that court's denial of their claim for attorney fees associated with posttrial proceedings.

A Kansas court may not award attorney fees absent statutory authority or an agreement by the parties. *Snider v. American Family Mut. Ins. Co*., 297 Kan. 157, 162,

13

298 P.3d 1120 (2013); *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 219, 364 P.3d 1206 (2015). The question of whether a court has authority to award attorney fees is a question of law over which an appellate court has unlimited review. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013).

In *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 135 P.3d 1127 (2006), our Supreme Court observed:

"[A] district court is considered an expert on the issue of attorney fees. *Link, Inc.*[*v. City of Hays*]*,* 268 Kan. 372, 382, 997 P.2d 697. It 'may apply its own knowledge and professional experience in determining the value of services rendered. [Citation omitted.]' *Service v. Pyramid Life Ins. Co.,* 201 Kan. 196, 221–22, 440 P.2d 944 (1968). Moreover, '[a]ppellate courts are also experts on the reasonableness of attorney fees. However, we do not substitute our judgment for that of the district court on the amount of the fee unless "in the interest of justice" we disagree with the district court. [Citations omitted].' *Link, Inc.,* 268 Kan. at 383, 997 P.2d 697." *Johnson*, 281 Kan. at 940.

Where a district court has the authority to grant attorney fees, its decision is reviewed under the abuse of discretion standard. *Wiles*, 302 Kan. at 81. A district court abuses its discretion only when it bases its decision on an error of fact or law or when its decision is so unreasonable that no reasonable person would agree with it. *Snider*, 297 Kan. at 169.

*Fees through trial*

In the first attorney fee order, the district court awarded the Waddells all the fees they incurred during the entirety of the suit, from commencement through trial. The court only granted Equity its fees from the time when Equity discovered its error in calculating the loan balance to the point it was granted partial summary judgment.

The Waddells claim the district court failed to provide any factual or legal basis supporting its later decision to reduce their attorney fees award. They maintain the district court "merely adopted [Equity's] reasoning." That claim, however, is not supported by the record. In amending the Waddells' attorney fees award, the district court correctly determined it only had statutory authority to award the Waddells attorney fees they incurred in connection with their RESPA claim. Under 12 U.S.C. § 2605(f)(3), a court may award, "in the case of any successful action under [RESPA], the costs of the action, together with any attorney fees incurred in connection with such action as the court may determine to be reasonable under the circumstances."

The Waddells argue "[t]he foreclosure action and the RESPA violations were inextricably intertwined to such a degree that segregation of attorney fees amounts into discrete portions is practically impossible." The attorney billing statements they submitted to the district court before trial failed to identify the claims to which the billed work was devoted. Work related to RESPA, therefore, was intermingled with work on their other claims and defenses. Because authority for the award of fees to the Waddells was limited, the district court necessarily applied its expertise to allocate a portion to their RESPA claim from among their various other claims and defenses. The district court was acutely aware of the claims and defenses the Waddells advanced and was well-placed to determine that part of their fees that was reasonably related to the RESPA claim. We find no abuse of discretion by the district court.

*Posttrial fees*

The Waddells also contend the district court erred in declining to award them posttrial attorney fees. They submit that Equity forced them to incur further attorney fees to try to retain the judgment originally entered by the district court.

15

In their brief, the Waddells failed to cite any legal authority or specific facts in the record supporting this claim. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). This issue, therefore, is not before us for consideration.

*Conclusion*

We find no error by the district court and we affirm.